BERGLAND, Appellant, vs. FRAWLEY and another, Respondents.

*October 13 — November 8, 1888.*

*Landlord and tenant: Stipulation to surrender property before expiration of lease: Right of re-entry: Authority of cotenant or partner to make surrender: Damages.*

1. A stipulation in a lease that the lessee shall surrender the leased premises to the lessor whenever the latter desires to proceed with contemplated improvements thereon, does not give the lessor the right to terminate the lease by re-entry, but is merely a covenant for the breach of which the lessor may recover damages.

2. Each of two lessees under a lease containing such a stipulation is the agent of the other to make the surrender when the contingency happens.

3. But if a lease containing no such stipulation is held by two persons as partners, one of them cannot surrender the lease without the concurrence of the other, if the latter is reasonably accessible and can be consulted.

4. A partner of the lessee in the business pursued on the leased premises, but who is not himself a lessee or interested in the lease, has no authority to surrender the lease.

5. Where the lessor is justified in entering and taking possession of the leased premises, the lessee can recover no damages for loss of a portion of the term or for injury to his business; but if the lessor destroys property of the lessee on the premises, or does any unnecessary damage thereto, the latter may recover therefor.

6. But if the lessee has previously sold his interest in the lease and business and the personal property on the premises, he cannot recover damages either for a wrongful re-entry by the lessor or for any injury to such property.

APPEAL from the Circuit Court for *Eau Claire* County.

In August, 1883, the defendant *M. S. Frawley* purchased and acquired the title to certain real estate in the city of Eau Claire, on which was situated a building known as the "Northwestern Hotel," then occupied by the plaintiff, *Mrs. Bergland*, and used by her as a boarding-house. On September 8, in that year, *Frawley* leased the premises to the

plaintiff, or to her and one Bostrom jointly. The plaintiff paid the rent in advance, and *Frawley* gave her a receipt therefor in these words: "Received of *C. Bergland* the sum of $300, in full for rent of Northwestern Hotel from September 8, 1883, until January 8, 1884; being four months' rent, at $75 per month. *Dated September 8, 1883.* M. S. FRAWLEY."

In October, 1883, the plaintiff left Eau Claire temporarily, and went to the northern portion of the state, where she kept a boarding-house for men employed on the Sault Ste. Marie Railroad; leaving Bostrom in charge of the leased building and the business carried on therein. She left her children, and, as she alleges, some personal effects, in the hotel, in charge of Bostrom, and was absent seven weeks. About November 17, 1883, and before the plaintiff returned to Eau Claire, the defendant *M. S. Frawley*, assisted by the other defendant, *T. F. Frawley*, re-entered and took possession of the leased property (Bostrom having vacated the same), moved the hotel to another foundation, broke it up considerably, and rebuilt or repaired it.

The plaintiff brought this action in February, 1884. After stating that she was lessee of the hotel until January 8, 1884, and enumerating the property she had therein on November 17, 1883, she alleges in her complaint as follows: "That on the 17th day of November, 1883, the defendants wilfully, wrongfully, and maliciously intending to injure this plaintiff, entered upon said premises, and undermined and raised said building from its foundation and removed it therefrom, and broke open the doors of said building, and ejected and drove the plaintiff's children from said building, and damaged the said property and furniture therein contained, and rendered the same entirely worthless by breaking said property and throwing a part of said property out of said building, and by placing and leaving all of said property exposed to the weather and unpro-

Bergland vs. Frawley and another.

tected, whereby the same was lost, stolen, and destroyed; and forcibly prevented this plaintiff from occupying said premises and from pursuing her said business therein." She alleges her damages, by reason of such wrongful acts, to be $2,000, and demands judgment for that sum and interest.

The defendants answered, in substance, (1) that if the plaintiff had any interest in the leased premises, or in the property described in the complaint, she owned the same jointly with Bostrom, who, it is therein alleged, was then living in Eau Claire; (2) that long before November 17, 1883, the plaintiff sold, assigned, and transferred all her interest in such premises and building, and in the property described in the complaint, to Bostrom, and that at the time of the alleged wrongful acts she had no possession of, or interest in, such premises or property; (3) that the premises were leased under an express agreement or condition that the same should be surrendered to the lessor, *M. S. Frawley*, by the lessees, whenever demanded by such lessor, he returning to plaintiff the unearned rent; that this was to enable the lessor to make certain contemplated improvements on the property, should he desire to do so, before the termination of the lease; and (4) that on or about November 17, 1883, Bostrom removed from the hotel, and voluntarily surrendered possession of the leased premises to the lessor.

The testimony introduced on the trial is very conflicting. It is sufficient to say of it that it tends to prove the material allegations both of the complaint and answer. The rulings of the court on the trial are sufficiently stated in the opinion. The jury returned a general verdict for the defendants. They also found specially that Bostrom was a copartner with the plaintiff in the business of the Northwestern Hotel during the fall of 1883, and that he is dead. A motion on behalf of the plaintiff for a new trial was denied, and judgment entered for the defendants pursuant to the verdict. The plaintiff appeals from the judgment.

*James Wickham*, for the appellant.

. For the respondents there was a brief by *H. H. Hayden*, and oral argument by *T. F. Frawley*.

LYON, J.   The premises in question were leased for the term of four months, and that term had not expired when the defendants re-entered and took possession thereof and removed and .improved the hotel.   They did so under the alleged stipulation in the lease that the plaintiff, or the plaintiff and Bostrom, should surrender the leased premises to the lessor, the defendant *M. S. Frawley*, whenever he desired to proceed with the contemplated improvement of the property.

Such stipulation is not a *condition*, which, upon re-entry by the lessor, determines the lease; but a *covenant*, the breach of which does not determine the lease, but only gives the lessor a right of action to recover damages for such breach.   1 Tayl. Land. & T. secs. 244, 291; 1 Washb. Real Prop. ch. 10, sec. 3, cl. 8.   In the treatise last cited it is said: "So, though one covenants in a lease to surrender the premises upon a certain contingency, it does not give the lessor a right to enter and expel the lessee upon the happening of such contingency, unless there is a right of re-entry therefor reserved in the lease."   See *Dennison v. Read*, 3 Dana, 586.   In the present case it is not claimed that there was a stipulation in the lease that *Frawley* might re-enter when he desired to improve the property, but only that in such contingency the lessee or lessees would surrender the leased premises.

Certain legal propositions involved in the case will now be considered, in connection with the acts of the parties and Bostrom in respect to the leased premises, and the instructions given by the court to the jury upon such propositions.

1. The question whether the plaintiff sold her interest in

Bergland vs. Frawley and another.

the lease and business, and her personal property on the leased premises, to Bostrom before the defendants re-entered and took possession of said premises, was litigated on the trial, and the testimony relating thereto was conflicting. The court submitted the question to the jury, with an instruction that if she thus sold the lease and property she could not recover in this action. The instruction is correct; for certainly, if the plaintiff was not the owner of the lease, or some interest therein, or the property alleged to have been destroyed or injured by the defendants, she has no cause of action against them on account thereof, even though their conduct was tortious. Probably the jury resolved the question in the negative, else they would not have found that the plaintiff and Bostrom were partners in the business prosecuted upon the leased premises during the fall of 1883.

2. If Bostrom was one of the lessees, and had an interest as such in the lease when the defendants re-entered, and if the alleged agreement was entered into to surrender the lease should the lessor desire to make the contemplated improvements before the expiration of the term, his consent to such re-entry (if he so consented) is a surrender of the lease, and binds the plaintiff. It may fairly be said that if the lessees stipulated to surrender the lease on the happening of a certain contingency, before the expiration of the term, each lessee was the agent of the other to make the surrender when the contingency happened. The jury were so instructed.

3. Assuming that Bostrom was one of the lessees and a partner with the plaintiff, and that the lease was held as partnership property, if there was no stipulation to surrender the lease before the expiration of the term on the happening of a contingency, we are of the opinion that, under the circumstances of the case, Bostrom could not bind the plaintiff by a surrender to which she had not as-

sented. The plaintiff had not left the country. She was reasonably accessible, and should have been consulted. Under these circumstances, we do not think Bostrom was her agent to make a surrender of the lease which would bind her. In other words, we think it was not within the real or apparent scope of his authority as a co-lessee or partner to do so. The case seems to be fairly within the reason of the rule, established and recognized by this court in several cases, to the effect that one of two partners cannot make a valid voluntary assignment of the firm assets, for the benefit of creditors, without the concurrence of the other partner, if the latter is reasonably accessible and can be consulted. *Brooks v. Sullivan*, 32 Wis. 444; *Rumery v. McCulloch*, 54 Wis. 565; *Coleman v. Darling*, 66 Wis. 158; *Farwell v. Webster*, 71 Wis. 485. Surely the surrender of this lease was as destructive to the partnership business as were the assignments in the above cases.

The jury were instructed, in effect, that if plaintiff and Bostrom were copartners in business and held the lease as such, Bostrom could make a valid surrender of the lease which would bind the plaintiff. The instruction is as follows: "If you find that the plaintiff and Bostrom were copartners in the business and held the lease as such copartners, and that said Bostrom consented to the acts of the defendants, either by words or by standing by and not objecting, then the plaintiff cannot recover, whatever the terms of the original lease might have been." This instruction omits an essential element in the authority of Bostrom to make a valid surrender, to wit, the existence of the stipulation in the lease to surrender the same on the happening of the contingency mentioned. We regard this instruction as erroneous. The error is material, because it may be that the instruction controlled the verdict. It is therefore fatal to the judgment.

4. If Bostrom was not a lessee or interested in the lease,

although a partner with the plaintiff in the business pursued on the leased premises, he had no authority, real or apparent, to make a valid surrender of the lease. If Bostrom was neither such lessee nor partner, it is very manifest that he could not bind the plaintiff by such surrender.

5. If the defendants, under the rules above stated, were justified in re-entering and taking possession of the premises, the plaintiff can recover no damages for loss of a portion of the term, or for injury to her business; but if the defendants destroyed her property, or did any unnecessary damage thereto, she may recover in this action for such destruction or injury. In *Aschermann v. Philip Best Brewing Co.* 45 Wis. 262, this principle is affirmed.

6. Numerous exceptions were taken during the trial to the rulings of the court on objections to testimony. We do not deem it necessary to determine these exceptions on this appeal. Having settled the principles of law which must govern the case, we think the learned circuit judge, on a retrial of the cause, will have no difficulty in confining the testimony within legal limits, without the assistance of this court.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.