In re SZPAKOWSKI.

SZPAKOWSKI v. BUWAY.   (No. 544–104.)

(Supreme Court, Appellate Division, Fourth Department.   January 6, 1915.)

LANDLORD AND TENANT (§ 95*)—LEASE—TERMINATION—"GET OFF."

    A lease, providing that if a sale of the premises were made the tenant would "get off," that is, surrender the premises, terminated immediately on the sale of the premises by the landlord, though it also states, following the words quoted, "but first party must pay damages," and though an advance payment of rent had been made, covering a period beyond such date.

    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 300–304; Dec. Dig. § 95.*]

    Merrell, J., dissenting.

Appeal from Erie County Court.

Application by Wincenty Szpakowski for the removal of Stanley Buway from certain premises.   From an adverse order, defendant appeals.   Affirmed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Ernest F. Kruse, of Buffalo, for appellant.
Merritt N. Baker, of Buffalo, for respondent.

ROBSON, J.   The proceeding in which the order appealed from was granted was duly initiated by the petitioner under the provisions of section 2231 of the Code of Civil Procedure to remove the respondent, as a tenant of the premises in question holding over after the expiration of his term without the permission of the landlord.   The facts upon which the determination of the proceeding to be made by the County Judge should rest were stipulated by the parties.   The written lease, under which the tenant, Buway, went into possession of the premises, was made by Thomas Smolarek, then the owner thereof, as lessor, and by Buway, as lessee, and is dated April 1, 1914. The term of the lease was 9 years from the 15th day of April, 1914, and it provided for the payment of annual rent at the rate of $90, to be paid at the end of each year.   The lease recited, and the fact is duly stipulated, that Buway paid Smolarek the sum of $350, which was applied upon the rent reserved by the lease.   It also contained this provision:

"In case first party [the lessor] sells place, second party [the lessee] agrees to get off, but first party must pay damages."

On April 21, 1914, Smolarek and wife conveyed the premises by warranty deed to the petitioner, Szpakowski, of which fact Buway was duly notified; but he refused to vacate the premises without first having his damages adjusted.   It is also stipulated that, in the event the lease should be held to have expired by reason of the facts recited, Buway would suffer substantial damages.

While the lease does not in express terms provide that its term shall ipso facto expire if a sale of the premises is made, yet it does provide

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that if a sale is made the tenant will "gét off"—that is, surrender the premises. Such surrender would, of course, terminate the relation of landlord and tenant, and end the lease. The lease, therefore, in effect provided for a 9-year term, unless sooner determined by a sale, in which case the term of the demise should at once expire. As was said in Manhattan Life Ins. Co. v. Gosford, 3 Misc. Rep. 509, 511, 23 N. Y. Supp. 7, 8:

"In such a case no condition is violated, but the term expires of its own limitation upon the happening of the event provided for. Re-entry is not required to reinvest the landlord with the right to immediate possession, and summary proceedings to recover it are maintainable"—citing Miller v. Levi, 44 N. Y. 489.

But it is urged that the provision, "but first party must pay damages," annexed to the stipulation that on a sale of the premises the tenant would "get off," operated as a condition precedent to the termination of the lease, and that the tenant was entitled to such damages as he had suffered before he could be required to surrender possession. The opinion of the court in Morton v. Weir, 70 N. Y. 247, is here in point as a statement of the law applicable in such case. That was an action by a tenant to recover of the landlord the value of certain improvements made by the former before the termination of the lease by a sale of the premises. The clause of the lease in question in that action was:

"In the event of the said party of the first part selling or agreeing to sell and convey said described premises to any purchaser thereof, this lease shall be canceled and at an end; but the purchaser thereof, or the party of the first part hereto, or their assigns, shall pay to the party of the second part a fair and just price or consideration for all permanent improvements on said premises, and in case the parties hereto or their assigns cannot agree upon such valuation, then the same is to be submitted to arbitration under and in accordance with the provisions of the statute in such case made and provided."

In disposing of the case the court said:

"The defendant [landlord] availed himself of the right reserved, and sold and conveyed the premises absolutely, without reservation or exception, and the grantee thereby acquired a title to the premises unincumbered by the lease and perfect as against the tenant. The latter had no right to occupy under the lease after the sale of the premises. He would not have been bound to attorn to the grantee and occupy under him, if the latter had been willing to regard the lease as still in force, and the tenancy as continuing, of which there is no evidence. Upon the sale the term ended by force of the agreement, and the right of the tenant to compensation became absolute; and upon the refusal of the defendant to submit the value to arbitration, a present right of action arose, and the right to recover by action was perfect."

The similar sequence of clause, conjunction, and meaning of the provision in the lease now before us, when compared with that considered in that case, is apparent.

It is suggested that the case of Abeel v. Hubbell, 52 Mich. 37, 17 N. W. 231, is at variance with Morton v. Weir, supra. In that case, as the opinion states, the lease under consideration—

"contained a clause providing that the lessor was to have the right of selling the farm, but in case he did so he was to pay the lessees $1.50 per acre for

plowing and a reasonable sum for such damages as they should sustain, 'to be left to two men, one chosen by each party. If they cannot agree, then they are to choose a third man.' "

The leased premises were sold, and arbitrators appointed, who, at the time the dispossess proceedings under review on the appeal were begun, had not completed their award. The court said:

"Assuming that the Hubbells were bound to surrender the property on compliance by Abeel with the condition referred to, it is very clear that, until an arbitration was had and a tender made, they could not be required to leave the land, unless, possibly, by a proper tender on the part of Abeel after a fair effort on his part, prevented by their fault, to get at their rights."

The court seems to hold that arbitration and payment or tender of damages to the tenant was under the terms of the lease a condition precedent to its termination by the sale. No authority in support of this position is cited; and it is apparent from an examination of the opinion that the court did not rest its decision solely on this ground. So far as it may be taken as an exposition of the law on that subject, it seems to be in direct conflict with the decisions of our courts, including that in Morton v. Weir, supra.

Matter of Coatsworth, 160 N. Y. 114, 54 N. E. 665, is a case in point. The lease there considered was made in 1847 and provided for an initial term of 15 years. Among other things, the tenant agreed to erect buildings on the premises and the lease provided:

"That at the expiration of the term above created unless they [the lessors] give the notice hereinafter provided for, for the purpose of renewing and continuing this lease, * * * they will pay the said party of the second part [the lessee] * * * the value of the said buildings that may then be standing upon said demised premises * * * that shall have been constructed on said premises as the said value thereof shall then be."

Then followed provisions for the ascertainment of such value by arbitrators. It was further agreed that in case the lessors should not, prior to the date of expiration of the initial term of the lease, give at least six months' notice—

"of their election to take possession of said demised premises at the expiration of this lease, and to pay for said buildings, vaults, and sidewalks at such appraised value, that then and in that event they will renew and continue this present demise and lease, and such omission to give said notice shall be deemed and taken to be a renewal and continuance of this demise and lease for five years from the said 1st day of April, 1862, upon the same terms and conditions hereinbefore expressed, * * * and they also covenant and agree as aforesaid that so often as they shall fail to give said six months' notice before the termination of such renewed term they will renew the said demise and lease, and such failure shall be deemed a renewal thereof for five years from the termination thereof, on the same terms and conditions as the said first renewal and continuance."

The lease continued from term to term by renewal or continuance thereof, no notice terminating it having been served until the year 1896, when the then owners of the demised lands served a six months' notice of their election to terminate the lease on April 1, 1897, which was the date of expiration of the last renewal term. After the service of the notice it was stated to the tenants in behalf of the owners that the latter disputed their obligation to make compensation for

the buildings upon the property, and the tenants thereupon refused to surrender possession of the premises. Proceedings to remove the tenants from the premises were instituted, resulting in their removal. These proceedings were reviewed by the court on appeal. In determining the question whether the landlords' promise to pay for the buildings erected by the tenant was a condition precedent to the former's right to recover possession the court said:

"It will be observed that the lease is silent as to the time when payment shall be made and that there is no provision requiring payment before delivery of the premises. In the absence of such provisions the law would doubtless require payment to be made as soon as the amount was ascertained and determined. This amount could not well be ascertained before the termination of the lease; for the condition of the buildings then standing upon the premises could not well be determined before the arrival of that event. The lease provides for the determination of their value at that time by three disinterested persons, who are to be chosen in accordance with the provisions of the lease. This, manifestly, contemplates an appraisement after the termination of the lease, and after it has become possible to determine the condition of the buildings to be appraised. It consequently appears to us that payment was not required by the terms of the lease as a condition precedent to the surrender of possession, but that the covenant was to pay after the value of the improvements had been ascertained by appraisal under the provisions of the lease."

The reasoning in the above quotation applies aptly to the case now before us. Until the termination of the lease by a sale of the premises there could be no damages accruing to the tenant, for until then he would have suffered none. The provision that the landlord should pay the damages, if a condition at all, was therefore not a condition precedent.

It is also suggested, apparently for the first time in this case on this appeal, that because of the advance payment of rent made by the tenant an intention of the parties may be spelled out that the lease should be for a term extending at least for the period covered by the advance payment of rent, which could not be cut down by a sale of the premises during that time. There is no expression in the lease, beyond the acknowledgment of payment of rent in advance, upon which such a construction of the terms of the lease can be placed. The right of the landlord to sell at any time is expressly recognized. If he exercised this reserved right during the time for which the tenant had paid the rent in advance that fact would simply be a matter to be considered in determining the amount of damages the landlord should pay the tenant.

The order should be affirmed, with costs. All concur, except MERRELL, J., who dissents.