HENRY RAHR'S SONS COMPANY, Respondent, vs. BUCKLEY, Appellant.

*January 13—February 9, 1915.*

*Landlord and tenant: Covenant or condition as to use of premises: Failure to use for purpose named: Re-entry: Wrongful exclusion of lessee: Damages.*

1. Words in a lease, "the said premises to be used for the purpose of hotel and saloon and bathing grounds," did not amount to a condition or covenant that the lessee would use the premises continually for the purposes named, and his failure to do so gave the lessor no right of re-entry under a provision that the lease should be void if the lessee should "use said premises, or any part thereof, contrary to the conditions" therein contained.

2. A lessee who has been wrongfully prevented by the lessor from using the leased premises for a portion of the term for which the rent has been paid, may recover their rental value for that portion of the term.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

The complaint in this action alleges that on the 2d day of March, 1911, the defendant leased to the plaintiff certain premises owned by him known as Harbor View, situated on the bay shore of Green Bay, near the city of Green Bay, for the term of one year from the 1st day of May, 1911, with covenant of peaceable and quiet enjoyment for said term, at an annual rental of $500, and also with option on the part of plaintiff to occupy said premises for three years' additional time, and that the defendant on the 1st day of July, 1911, unlawfully and wrongfully entered upon the premises and ejected the plaintiff therefrom and ever since has occupied the same and kept the plaintiff out of possession, to its damage in the sum of $1,000.

The lease in question is made a part of the complaint. The defendant answered admitting the execution of the lease and the corporate existence of the plaintiff, and denies every other allegation of the complaint, and sets up several separate defenses, among others that the plaintiff ran the property

in an unlawful and illegal manner and on the 1st day of July, 1911, abandoned the premises; and for a further defense alleges in substance that the plaintiff is the owner of a resort near by the defendant's property known as Bay View Beach, and that plaintiff leased the defendant's property for the purpose of injuring the defendant's property and enhancing the value of its own.    The defendant also sets up a counterclaim claiming damages on account of the bad reputation which the plaintiff gave the property in managing and running the same as an improper place, and asks damages in the sum of $1,000.

The plaintiff replied to the counterclaim denying the allegations thereof.    The portions of the lease material in this case are as follows:

"  .    .    .    .    .    .    .    .    .    .    .

"Witnesseth, that the party of the first part hath agreed and doth hereby agree to lease unto the said party of the second part, the following described premises, to wit: two acres in private claim forty-six (46) with all buildings thereon, known as Harbor View premises or Buckley's, and situated east of the grounds leased by John A. Cusick at Bay Beach, also including the following personal property: one cash register, twelve tables, three dozen chairs, three rustic benches, one cook stove, knives and forks, fifteen dozen bar glasses, three beds, three mattresses, three springs for bed, six pillows, three dozen chairs, one rug, one sideboard, two wash tubs, one cupboard, ten towels, three dozen bathing suits, two gasoline stoves, two burners for stoves, one dozen dishes, also including bath house.

"It is agreed that if so desired by the party of the second part, an extension of three additional years will be granted at the same rental.

"To have and to hold the same for the term of one year from the first day of May, A. D. 1911, at the rate of five hundred ($500) dollars per annum, payable in instalments of —— dollars monthly, in advance, the said premises to be used for the purpose of hotel and saloon and bathing grounds."

.    .    .    .    .    .    .    .    .    .    .    .

"It is further understood and agreed, that if the party of the second part, or his assigns, shall fail to pay the rent at the

times above stated, or shall use said premises, or any part thereof, contrary to the conditions herein contained, or shall wilfully or maliciously do injury to the same, this lease shall be void as to the party of the second part, and the party of the first part, or his legal representatives, shall be entitled to the immediate possession of said premises, without hindrance or delay, and to a recovery of all damages sustained by the acts of the party of the second part."

The case was tried by the court and a jury, and after the evidence was all in it was agreed between the parties that the jury should be discharged and that the case be submitted to the court for its decision upon the facts and the law. The court found that the plaintiff was entitled to recover. Judgment was entered accordingly, from which this appeal was taken.

For the appellant there was a brief by *Minahan & Minahan,* and oral argument by *V. I. Minahan.*

For the respondent there was a brief by *Martin, Martin & Martin* and *G. F. Clifford,* and oral argument by *Mr. Clifford.*

KERWIN, J. The learned trial court below filed the following opinion covering the material questions in the case:

"The defendant owned the property in question. He had a license to sell liquor at retail in a building on the premises. The plaintiff is a brewing company. March 2, 1911, the defendant leased to the plaintiff, by written lease, said premises, the lease providing that the premises were to be used for the purpose of hotel and saloon and bathing grounds. The term was one year. The rent was $500 per annum in advance. The plaintiff took possession and paid the rent for the year, $500. The plaintiff put one Hunt in possession, under an agreement with him and *Buckley* that he should run the business under *Buckley's* license until July 1st, and pay rent to the plaintiff and obtain a license July 1st and continue to run the business and pay rent. Because Hunt ran his business so as to give the place a bad reputation the

town board made it known to the parties that they would not give Hunt a license. *Buckley* was willing that the plaintiff should put any one in Hunt's place to whom the town would grant a license, and so informed the plaintiff. The plaintiff made no application for a license for any one. *Buckley* applied for a license, requesting the board to grant a license to any one for whom the plaintiff might ask it, and only to act upon his application in case no other application was made. A license was granted to *Buckley* July 1, 1911. He obtained it for the purpose of retaining the right to conduct or have conducted on said premises a saloon, without which right the rental value of the premises would not exceed $120 per year. The population of the town was 2,600. Including *Buckley's* there were twenty-six licenses in the town June 30, 1907. Hunt left the premises and delivered possession to the plaintiff by returning or handing to it the keys. July 1st *Buckley*, without plaintiff's permission, broke into the building and took possession of the property, and has conducted a saloon business on the premises ever since. The plaintiff asked a return of the possession. Defendant never returned any of the $500.

"Does the lease contain a condition that the lessor may enter and defeat it if the lessee fails to continually use the premises as a saloon?

" 'A condition . . . is a clause of contingency, on the happening of which the estate granted may be defeated.' 2 Bl. Comm. 299.

"The language used is to be strictly construed against forfeiture. A mere breach of covenant does not work a forfeiture or give a right of re-entry. *Bergland v. Frawley*, 72 Wis. 559, 40 N. W. 372. But if the lease also provides that if the lessee neglects or fails to perform and observe a covenant the lessor may lawfully enter and terminate the lease, the lessor has that right. *Wheeler v. Earle*, 5 Cush. 31; *Bergland v. Frawley*, 72 Wis. 559, 562, 40 N. W. 372. But

the same rule of construction applies, when working out a condition from the two provisions, as when determining whether a certain provision constitutes a covenant or condition. So when there was a covenant to repair and a provision that 'if the lessee shall do or cause to be done any act, matter, or thing contrary to and in breach of the covenants of this lease,' it was held that failure to repair did not give a right to re-entry because it was not an act done contrary to the provisions. It was a mere failure to act as required.

"The clause in the lease in question relied upon as creating the condition and giving the right of re-entry is this:

" 'It is further understood and agreed that if the party of the second part shall use said premises or any part thereof contrary to the conditions herein contained, this lease shall be void as to the party of the second part, and the party of the first part shall be entitled to the immediate possession of the premises,' etc.

"The contention is that this provision, together with the language 'the said premises to be used for the purpose of hotel and saloon and bathing grounds,' give the right of re-entry and forfeiture. Unless the language quoted as to use amounts to a condition, it is not within the terms of the other provision quoted. If it is a condition, then it is such without the aid of the other provision making it so.

"But as there is nothing said relative to use of the premises in the lease aside from the words quoted, it may be that the document as a whole would require us to construe the language as referring to that quoted, but designating it by a wrong name. This is the most favorable view that can be taken of the language for the defendant. But it requires a covenant to use continually the premises for the purposes named. Is there such a covenant? That some meaning must be given to the language 'said premises to be used' will be conceded. Is it a covenant to use at all times during the term for the purpose named, or a designation of the purposes

for which it may be used? If a covenant that will use for purposes named, note first it must be used for all three—'hotel and saloon and bathing grounds.' Note second, there is no limit as to time during the term. If ceasing to use for any one of the purposes for a short time would be a breach, it would be a breach also to cease using for either of the other purposes. It would not be claimed that the fact that no one bathed during the winter would constitute ceasing to use it for bathing purposes. But failure to furnish board and lodging for guests—failure to run a hotel—would be as much of a violation of the covenant as failure to run a saloon; and failure to keep open as hotel and saloon in one season of the year would be as much of a breach as failure to do so at another season. If this language amounts to a covenant or condition as to the lessee's use of the property, I think it merely a limitation as to the uses. The purposes for which they may be used are enumerated. The lessee does not bind himself to use for those purposes continually or at all. The right of re-entry is not given *pro* nonuser, but for using, contrary, etc. As in the *Doe-Stevens Case* [3 B. & Ad. 299], the covenant was to repair—the right of re-entry was given for doing or causing to be done anything contrary to and in breach of the covenants. There was no forfeiture because nothing was done. So not using for any purpose is not using contrary to conditions of the lease.

"I have sought with the limited means at my disposal for judicial constructions of such language as is contained in the lease in question. I have found no case where it was construed as a condition or covenant that the lessee would continue to use the premises for the purposes specified. In the one case that I have found it was claimed that the terms of the lease had been violated by not continuing to use for the purposes named and using for another purpose. The language was, 'is made upor and subject to the express condition that for twenty years shall use that portion of the granted

land . . . exclusively for hotel accommodations, and for no
other purpose whatever.' There was a further provision that
terms not affected by destruction of buildings by fire. Build-
ings were destroyed, not rebuilt, and premises leased for
other purposes. Held, forfeiture and right to re-enter. In
case referred to in 6 Wis. 12 [*Hooper v. Broderick,* 11 Sim.
46], there was express covenant to use and keep open as an
inn. It proved a losing business, and equity refused to en-
join from discontinuing. It was not deemed that there was
a covenant to do so, on which lessor might have maintained
an action.

"In most of the reported cases the lease contained an ex-
press agreement not to use for other purposes. Some cases
have held that a specification of the purposes for which to
use amounted to a covenant not to use for other purposes. A
different rule was early stated by our supreme court. *Brug-
man v. Noyes,* 6 Wis. 1. The language of the lease was, 'to
be used as cabinet warerooms.' An injunction was sought to
restrain lessee from using for sale of cigars and other things.
The court says:

" 'The insuperable difficulty in this case is that there is no
express covenant not to use the building except for cabinet
warerooms.' . . . 'Counsel for the complainant contends that
the clause in the lease that the premises were to be used as
cabinet warerooms amounts to a direct covenant to use them
as such, and for no other purpose whatever. We are unable
to concur in this construction of the lease.' . . . 'And if he
can compel the defendants to change their trade from selling
cigars and safes to selling cabinet ware, it appears to us he
could compel them to use them as cabinet warerooms, even if
they should desire to remove from the buildings and shut
them up. We apprehend that a court of equity would pause
before exercising such a jurisdiction as to compel the defend-
ants to occupy the premises as cabinet warerooms when they
desired to close them.'

"There is no intimation that equity would not do so if there
was an express covenant to keep open and use—there clearly

would be no adequate remedy at law. Were the question whether the provisions did not amount to a covenant, and conditions not to use for any other purposes than those specified, it might well be held that there is a covenant to continue without interruption the use for the purposes specified.

"'If rent has been paid to apply upon any portion of the term which the lessee is prevented from enjoying, that may be recovered with legal interest. If no sum has been so paid, the damages are deemed to be nominal only.' *Gross v. Heckert,* 120 Wis. 314, 322, 97 N. W. 952. The damages to that extent would be the same in this form of action, if the rent paid was equal to the rental value. If more, only the value could be recovered for; if less, full value could be recovered. The evidence shows that rental value was same as that paid. If the use of the premises were of same value during the whole year, one month the same as another, the value of the remaining ten months would be ten twelfths of the $500. But such is not the case. The premises have no rental value for the purposes named or any rental value except during the summer season. This is considered from May 15th till September 15th, but business is done from May 1st to October 1st, a period of five months. The first half of May probably equal in value to the last half of September. This makes all the value in those five months, or $100 per month. (Nugent says in fixing the rent he would apportion it over those months.) The plaintiff enjoyed two months of the term. The balance of the term paid for was worth $300 unless for some reason it is shown to be worth less. Had the town 'gone dry' and no license been granted, it would have lost all of its value for saloon purposes, and the recovery would have been limited to its value for other uses. The plaintiff, by failing to obtain a license July 1st, lost the right to use the premises for saloon purposes until a license would thereafter be procured after fifteen days' public notice of the application. No steps were taken. Had they acted at once after that, they would have rendered the prop-

erty not a lawful place for a saloon for about eighteen days, which would be three fifths of a month, or $60. But during that time it was worth $24 a month for other purposes, or about $14.75. This would make the rental value of the unexpired portion of the term about $255.

"I have considered the other positions taken by defendant's counsel in his brief, but conclude upon the whole evidence the plaintiff is entitled to a verdict for $255 with interest from July 1, 1911, amounting to $276.65.

"Motions for directed verdicts were made at the close of the trial November 30, 1912. The jury were discharged with the understanding that after hearing arguments from counsel the court would decide the motions and order such verdict entered as it thought to be the proper one. I think the verdict should be entered *nunc pro tunc* as of that date. And the order will be that verdict be entered for the plaintiff for $276.65 as of the date November 30, 1912."

We approve and adopt the foregoing as the opinion of this court.

*By the Court.*—The judgment of the court below is affirmed.