WALTER HUGHES *v.* FRANK DONLON *et al.**

(*Jackson.* April Term, 1923.)

1. **PLEADING.** On demurrer claim of being innocent purchaser of rent notes held unsustainable.

 On demurrer to bill to enjoin lessor's grantee from negotiating notes executed by lessee, where it was alleged that defendant knew they were rent notes, and was bound by the terms of the written lease in connection with which the notes were given, defendant could not assert she was an innocent purchaser of the notes. (*Post, p.* 512.)

 Case cited and approved: Sloan v. Cantrell, 45 Tenn., 571.

2. **LANDLORD AND TENANT.** Tenant's stipulation to vacate in ninety days in event of sale of leased premises construed.

 Where a stipulation in a lease provided "Tenant agrees to vacate in ninety days in event of sale to any other party" than himself, the ninety days was to run from the date tenant received notice of sale. (*Post, pp.* 512-523.)

3. **LANDLORD AND TENANT.** Tenant's agreement to vacate in event of sale held a covenant which did not terminate lease.

 Where a lease reserved no right of re-entry, an agreement therein by tenant, in event of sale of premises to any party other than himself, to vacate within ninety days, *held* a covenant which did not terminate lease against purchaser's wishes. (*Post, pp.* 512-523.)

 Cases cited and approved: Miller v. Levi, 44 N. Y., 489; Morton v. Weir, 70 N. Y., 247; Bruder v. Geisler, 47 Misc. Rep., 370; Matter of Szpakowski, 166 App. Div., 578; Wallace v. Bahlhorn, 68 Mich., 87; Rhode Island Hospital Trust Co. v. Baxter, 20 R. I., 553; Doe v. Phillips, 2 Bing., 13; Dennison v. Read, 3 Dana, 586;

---

*On construction of provision in lease as to termination of lease hold in case of sale of premises see note in L. R. A., 1915C 234.

Hughes v. Donlon.

Wheeler v. Dascomb, 3 Cush., 285;   Bergland v. Frawley, 72 Wis., 559;   Fifty Associates v. Howland, 11 Metc., 99,

Cases cited and distinguished: Baxter v. City of Providence, 40 Atl., 423;   Wallace v. Bahlhorn, 68 Mich., 87;   Miller v. Levi, 44 N. Y., 489;   Wheeler v. Dascomb, 3 Cush., 285;   Pacific Warehouse Co. v. McKenzie-Hunt Paper Co., Ann. Cass., 1916B, 307.

4. **LANDLORD AND TENANT.**   Consent of tenant not necessary to sale of leased premises.

Tenant's consent to sale of leased premises is not necessary, and the sale does not give the tenant the option to go or to stay. (*Post*, pp. 523,524.)

5. **LANDLORD AND TENANT.**   Sale of leased premises does not deprive tenant of leasehold.

A sale of leased premises does not deprive á tenant of his leasehold. (*Post*, pp. 523,524.)

6. **LANDLORD AND TENANT.**   Doubtful clauses to be construed as covenants rather than conditions or limitations.

Where it is doubtful whether a clause in a lease is a covenant, a condition, or a limitation, such clause is to be construed as a covenant. (*Post*, p. 524.)

Headnote 1. Pleading, 31 Cyc, p. 336.   2. Landlord & Tenant, 35 C. J., section 216.   3. Landlord & Tenant, 35 C. J., section 216.   4. Landlord & Tenant, 35 C. J., section 215.   5. Landlord & Tenant, 35 C. J., section 215.   6. Landlord & Tenant, 35 C. J., section 489.

FROM SHELBY

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. ISRAEL H. PERES, Chancellor.

McKINNEY BARTON, for appellant.

STICKLEY & FITZHUGH and WM. M. HALL, for appellee.

MR. THOMAS H. MALONE, Special Judge, delivered the opinion of the Court.

The question in this case which counsel have debated on petition for *certiorari* with learning and ability is whether a certain clause contained in a lease is a condition, or conditional limitation, or a covenant.

The case was tried below on bill and demurrer, and the material allegations of the bill are as follows:

It is alleged by the complainant, Walter Hughes: That on June 9, 1920, he entered into a lease contract with the defendant, Frank Donlon, for the rental of certain premises in the city of Memphis, Tenn., for a term of three years, the consideration being $6,840, evidenced by 36 notes of $190 each. That these notes were, on their face, negotiable notes, and did not show the consideration for which they were given.

That the lease contained the following clause:

"It is understood and agreed that the above Walter Hughes is to be given the first right to buy at an agreed price, which is to be made at a later date, said price to be made by Frank Donlon, which is to be given in writing and said Walter Hughes is to have ten days to comply. Tenant agrees to vacate in ninety days in the event of the sale to any other party."

That thereafter the property was offered by Donlon to Hughes at a certain price, which Hughes refused to accept, and that Donlon thereupon sold the property to the defendant Mrs. M. W. McBee, "on the ——— day of ——— 1921."

That on September 5, 1921, complainant, Hughes, having learned of this sale, and of the fact that the lease

and part of the rent notes had been assigned and delivered to the defendant Mrs. McBee, wrote a letter to John H. McBee, who was the agent of and who was acting for the defendant Mrs. M. W. McBee, "notiying him that, pursuant to the terms of the lease, he would vacate the property on October 1, 1921, this being within 90 days of the date of sale, and demanding from the said McBee the cancellation of the lease and the delivering up to him, the said Walter Hughes, of the remainder of the rent notes above referred to, maturing on October 1, 1921, and subsequent thereto."

That in answer to said letter "the defendant Mrs. M. W. McBee did on September 8, 1921, reply that he did not agree with complainant as to his right to vacate said lease, and stated that he had bought the property lease together with the notes signed by the complainant without ever having seen the lease contract, and that he did not know what it contained, but, upon receipt of complainant's letter, he had secured a copy of it, and that he contended and would contend that the complainant's construction thereof was not correct, but, on the other hand, that the clause referred to in said lease was written for the benefit of the owner entirely and not of the lessee, and that he, as the owner, refused to cancel the lease and deliver up the notes to the complainant."

It is further stated in the bill:

"Complainant is willing to admit the facts as stated in defendant McBee's letter of September 8, 1921, are true, to wit: That at the time the defendant McBee bought the property from the said Frank Donlon, and also the notes signed by the complainant, without ever having seen

the lease contract, and at that time he had no actual knowl-
edge as to its contents with respect to the agreement above
referred to. Complainant avers, however, that, although
the notes on their face do not show that they were rent
notes, but were plain negotiable notes, the defendant knew
that they were rent notes, and was bound by the terms of
the written lease as fully as though he had seen said lease.
Neither Donlon nor McBee have at any time demanded
possession of said premises, but, on the contrary, contend
that said lease cannot be terminated except by their con-
sent, which they have not given, however the complainant
vacated said property and notified defendants thereof."

It is then alleged:

"That, as above stated, there are now outstanding and
in the hands of the defendants 21 promissory notes of $190
each, which are negotiable on their face, and which, if
placed in the hands of an innocent purchaser, would be a
just and valid indebtedness against complainant, against
which he would have no defense, in the event this court
should hold that, under the terms of said written lease,
he had the right to vacate said property within 90 days,
and requiring the delivering up to him of the balance of
said rent notes."

The prayer of the bill is for an injunction preventing
the defendants from negotiating or transferring the notes;
that the lease be canceled and declared void as of October
1, 1921; that the defendants be required to deliver up to
the complainant the rent notes mentioned; and for general
relief.

The defendant Frank Donlon demurred to the bill on
two grounds:

(a)  For want of equity.

(b)  Because the provision in the lease above quoted with regard to sale of the leased premises merely gave the lessor the right, at his option, to cancel, in event of a sale.

The defendant Mrs. McBee demurs to the bill:

(a)  For want of equity.

(b)  Because of the provision as to sale hereinabove quoted does not entitle complainant to a cancellation of the lease, being merely a covenant and not a condition.

(c)  Because the provision above mentioned was inserted in the contract for the benefit of the lessor, and is not a limitation upon the term of the lease, but a covenant that the lessee would vacate the premises in the event of a sale, when notified so to do by the lessor.

The chancellor sustained the demurrers of the respective defendants, and dismissed the bill, and the case was appealed to the court of civil appeals, which in turn sustained and affirmed the decree of the chancellor.

In his petition for *certiorari,* the complainant, Hughes, makes two contentions:

(a)  That the clause already quoted creates a conditional limitation, and that upon the happening of the contingency provided for, viz. the sale of the property, the lease terminated *ipso facto.*

(b)  That, if the provision should be construed to be a covenant, the result would be the same, so far as the tenant is concerned, unless the court should, by construction, extend the language, the contention being that the language would in any event constitute a special limitation upon the term of the lease.

On behalf of the respondents, it is insisted. .

(a)    That the bill shows that the defendant Mrs. Mc-
Bee was an innocent purchaser for value of the notes in
question.

(b)    That the present case is ruled by our own case of
Sloan v. Cantrell, 5 Cold. 571.

(c)    That irrespective of this case the words quoted
must be construed merely as a covenant on the part of
the lessee; and as conferring a waivable option on the
lessor.

1. It may be stated at the outset that the respondents
can hardly succeed in their contention that the defendant
Mrs. McBee was an innocent purchaser of notes. The
case stands here on demurrer, and we have already quoted
the language of the bill which charges that "the defend-
ant knew that they were rent notes," etc.                    •

We may add that it is hardly conceivable that the de-
fendant, in purchasing a building under lease, and re-
ceiving an assignment of the lease calling for rent notes
executed by the complainant, and then receiving notes
executed by the complainant for the exact amount of the
rent, would be ignorant of the character of the notes so
assigned.

2.    Did the language in question create a conditional
limitation, which ipso facto terminated the lease upon sale
of the property?

The petitioner Hughes relies upon the following au-
thorities to sustain his contention in this behalf: Baxter
v. City of Providence (R. I. 1985), 40 Atl., 423; Miller v.
Levi, 44 N. Y., 489; Morton v. Weir, 70 N. Y., 247; Bruder
v. Geisler, 47 Misc. Rep., 370, 94 N. Y. Supp., 2; Matter of

*Szpakowski,* 166 App. Div., 578, 151 N. Y. Supp., 211; *Wallace* v. *Bahlhorn,* 68 Mich., 87, 35 N. W., 834.

In *Baxter* v. *City of Providence,* supra, the lease contained the following clause:

"And the parties of the first part, for themselves, their heirs and assigns, further reserve the right to sell said demised premises at any time during the said term of this lease, and, in case of such sale, the said party of the second part, for himself, his heirs, legal representatives, and assigns, agrees to surrender and deliver possession of said premises at once to said parties of the first part, and releases any further claim on said demised premises."

After stating that the complainant's contention was "that this clause is a mere agreement to surrender, and not a conditional limitation, whereby a sale operates to terminate the lease," the court said:

"I think there can be no doubt that the object and intention of the provision was to terminate the lease in case of sale. The objection made to it is that it is not mutual by its terms. I do not think this is so. The lessor reserves the right to sell, and the lessee agrees to surrender possession at once upon sale. The lessee could not be compelled by a new owner to hold it against his agreement, and, if the occupation continued after the sale, it would be by virtue of a new agreement between the parties, and not by virtue of the lease. The parties must have meant that a sale was to terminate the lease *ipso facto,* and the lessee's covenant signified his assent to this; otherwise, no adequate force can be given to it. Reasonable notice was given to the lessee, and, according to his own agreement, his right to remain had expired when the deed

149 Tenn.—33.

passed. He had therefore no equitable right to the premises when the land was condemned for a street, and, in my opinion, he presents no equitable ground for relief when he asks for an injunction, in spite of his own agreement to surrender · possession upon a sale. I therefore direct the entry of an order dissolving the *ex parte* injunction, and denying the motion for a temporary injunction."

As will be noted, the effect of the court's decision was to hold the tenant to his agreement to vacate the premises in case of a sale.

But the court apparently reached this conclusion upon the theory that the language of the lease created a conditional limitation, whereby it was terminated in the event of a sale.

In the later case of *Rhode Island Hospital Trust Co.* v. *Baxter* (1898), 20 R. I., 553, 40 Atl., 1135, a case involving the same lease, the supreme court of Rhode Island adopted the opinion of Stinnes, Judge, delivered in the injunction suit, supra. In that case the purchaser was suing the tenant for use and occupation of the premises.

In the case of *Wallace* v. *Bahlhorn* (1888), 68 Mich., 87, 35 N. W., 834, the parties entered into a written contract in December, 1879, containing the following clause:

"For the term of one year from the first day of April next, with the privilege of a longer lease if both parties are suited (for a term of eight years, reserving the right to sell part or all.)"

The tenants went into possession under this lease, and remained there for a number of years. In November, 1886, the premises were sold, and the vendees gave notice to the tenants to vacate on April 1, 1887.

One of the findings of fact made by the trial judge was as follows:

"The defendants admitted that they were to leave the farm when it was sold; and agreed to move off from it in the spring."

Affirming a judgment for plaintiffs (the purchasers of the farm) the supreme court says (page 89 [35 N. W., 835]):

"We think the fair construction of the lease is that it should terminate upon a sale of the premises, or (if of) a portion of them, as to the part of the farm sold. A sufficient sale is found by the court. It seems, also, from the findings of fact, that the defendants understood the lease as we construe it, and promised, when notified of the sale, to move off of the farm in the spring of 1887."

In the case of *Miller* v. *Levi,* 44 N. Y., 489, Miller leased to Levi certain property for a term of four years, with the privilege reserved to terminate the lease at the end of any year, by giving 60 days' notice, in case he should sell or should desire to rebuild. The premises having been sold and notice given, the defendant Levi continued to hold after the expiration of the allotted time, and a statutory proceeding for possession of the premises was brought against him.

Drawing the distinction between a condition and a conditional limitation, the court said:

"Immediately upon sale by Miller, and notice thereof to the tenant, the limitation attached to the estate of the latter, without further act on the part of Miller. There then arose a limitation of his term, to-wit, its expiration on the 1st of May following. The act itself, in the lease contemplated, to-wit, a sale with notice, created the ex-

piration. Nothing further was necessary. In the case of cutting timber, or in that of using a building for an extrahazardous purpose, the act, although a breach of a condition, did not terminate the estate. An entry, or its equivalent, was also necessary. They were cases of conditions merely, while the case before us is that of a conditional limitation. The 'term' of the lease must, therefore, be taken to have 'expired' on the 1st of May, 1864. The proceedings were authorized by the statute, and judgment must be affirmed."

The respondents cite authorities from other jurisdictions, but rely especially upon the case of *Sloan* v. *Cantrell* (1868), 5 Cold., 571.

This was an unlawful detainer suit, tried originally before three justices of the peace, and appealed to the circuit court, where verdict and judgment were rendered for the plaintiffs, and the defendants appealed.

The written lease, which was for a term of five years, contained the following provision:

"It is further agreed between the aforesaid parties, that, if the said parties of the first part shall, at any time within the first three years of the duration of the lease aforesaid, deside to sell the said premises, upon notice of such desire being given by said Cantrell to said Sloan, the said Sloan shall, within one year from the date of said notice, vacate said premises and surrender up the unexpired balance of said lease, for which he shall receive the consideration of twenty-five hundred dollars; and if such notice of desire to sell said premises, shall by said Cantrell at any time within the fourth year of said lease, be given to said Sloan, then, in that case, said Sloan shall, within one year

from the date of said notice, vacate said premises and sur-
render up the unexpired balance of said lease, and for
this he shall receive the consideration of one thousand
dollars."

During the continuance of the lease, the lessor, Cantrell,
served a written notice upon Sloan, which recited that "it
was understood and agreed between the parties that I
could put an end to the said lease at any time within the
first three years, upon giving notice, and that you would
vacate said premises and surrender up the unexpired bal-
ance of said lease within one year from the date of such
notice," and notifying the tenant "to vacate said premises
and surrender up the remainder of the said lease within
one year from this day." Nothing was said about a sale.

The $2,500 stipulated in the lease as the consideration
for the surrender was not paid or tendered to Sloan prior
to bringing suit.

The circuit judge charged the jury that:

"If, after this notice, if so given, defendant held over
after the expiration of one year from legal service of such
notice, he was guilty, under our statute, of unlawful de-
tainer."

It was held (page 575) that this instruction was erro-
neous, because given on the hypothesis that such notice
had been given to Sloan of the plaintiff's wish to termi-
nate the tentancy as was provided for in the written lease,
whereas the written notice, above mentioned (which was
the only proof in the record on this point), did not state
that the landlord wished to sell the premises as required
by the terms of the lease.

It was further insisted on behalf of Sloan, the plaintiff
in error, "that the stipulation in the lease that, upon the

receipt of a certain notice, the lessee should vacate the premises and surrender the unexpired balance of the lease, must be regarded, not as a condition operating upon a certain contingency to divest the estate, but as a covenant merely, on the part of the lessee, for breach of which the lessors must resort to their action for damages, or seek their remedy in equity."

Responding to this contention, the court said (page 576):

"In that part of the written lease preceding the clause now under discussion, a right of reentry is expressly reserved as a remedy for the nonpayment of rents; but no right of reentry is given in connection with the stipulation now under discussion. It is simply provided, that, upon notice being given, the said Sloan shall, within one year from the date of said notice, vacate said premises and surrender up the unexpired balance of the lease. There is here no reservation of the right of re-entry; no provision that upon the happening of the contingency the lease shall be void, or the estate of the tenant terminate, and none of the words of *proviso* or condition, by which a condition in a deed is usually expressed. We do not decide that an estate upon condition can be created by the use of certain technical words only; but we do hold that the intention to raise a condition or a limitation by which a vested estate may be defeated must appear in the deed, either by technical words, or by expressions clearly conveying the idea to which those technical words are most appropriate; and we think that the clause now in question must be held to amount to a covenant merely, and not a condition, or a limitation.

"We know of no case in which it has been held that an estate upon condition was created by expressions or stipulations like those in the deed before us.  The general doctrine is stated by Mr. Washburn, as follows:  'So, thoough one covenant in a lease, is to surrender the premises up*n a certain contingency, it does not give the lessor a right to enter and expel the lessee, upon the happening of such contingency, unless there is right of re-entry therefor reserved to the lessor in the lease.  So, where the lessee agreed to surrender the premises at any time after so many months, on being paid so much money, it was held to be a covenant, only, and not a condition, nor a conditional limitation which would determine the lease.  And it may be stated as a general proposition that courts always construe similar clauses as covenants only, rather than conditions or conditional limitations.'  1 Wasb. on Real Prop. 320."

The court further cited *Wheeler* v. *Dascomb,* 3 Cush., (Mass.) 285, hereinafter reviewed, and also *Doe dem. Will-son* v. *Phillips,* 2 Bingham, 18, where the lease between the parties contained the following stipulation:

"It is also further agreed and clearly understood, that in case the said A. W., or his heirs, executors and assigns, should want any part of the said land to build or otherwise, or cause to be built, then the said T. R., or his heirs, executors, or assigns, shall and will give up that part or parts of the said land, as shall be requested by the said A. W., by his making an abatement in proportion to the rent charged, and also to pay for so much of the fence at a fair valuation, as he shall have occasion, from time

to time, to take away, by his giving six months' notice of what he intends to do,"

—saying at page 579:

"It was held that the stipulation for the surrender of the premises above quoted was a covenant and not a condition, and that an action of ejectment could not be sustained by the landlord before the expiration of the stipulated term."

It is insisted by the petitioner that the case of *Sloan* v. *Cantrell* was decided on the question of notice, and that whatever was said on the subject of covenants and conditions was mere dictum.

It would seem, however, that this court, in sustaining the insistence of the plaintiff in error on this point, was, to say the least, laying down a rule for the guidance of the circuit judge on the new trial of the case. We think that this could not be properly termed a dictum.

It is said by Chancellor KENT:

"If it be doubtful whether a clause in a deed be a covenant or a condition, the courts will incline against the latter construction; for a covenant is far preferable to the tenant. If a condition be broken, the landlord may indulge his caprice, and even malice, against the tenant, without any certain relief; but equity will not enforce a covenant embracing a hard bargain; and, at law, there can be no damages within an injury. Whether the words amount to a condition, or a limitation, or a covenant, may be matter of construction, depending on the contract. The intention of the party to the instrument, when clearly ascertained, is of controlling efficacy; though conditions and limitations are not readily to be raised by mere inference and argument. The distinctions on this subject are ex-

tremely subtle and artificial; and the construction of a deed, as to its operation and effect, will after all depend less upon artificial rules than upon the application of good sense and sound equity to the object and spirit of the contract in the given case." 4 Kent's Commentaries, star p. 132.

Applying these rules to the stipulation in question, viz., the "tenant agrees to vacate in ninety days in event of sale to any other party," is it not reasonable to hold that the language in question constitutes a covenant rather than a condition, or a conditional limitation?

When would the 90 days begin to run?

We think the fair construction would be, as insisted by counsel for respondents, that, this would be from the date that the tenant received notice of the sale. Certainly, if a sale had been made, of which the tenant was ignorant, he could not justly be charged with a breach of his covenant for failing to vacate the premises within 90 days from the date of the sale. If this be so, it would seem optional with the landlord or his vendee to give the notice.

In the case note to *Pacific Warehouse Co.* v. *McKenzie-Hunt Paper Co.,* as reported in Ann. Cas., 1916B, 307, we find the following:

"It seems to be the rule that where the lessee agrees to surrender the premises at the option of the lessor the stipulation amounts to a covenant merely as distinguished from a condition. *Doe* v. *Phillips,* 2 Bing., 13, 9 E. C. L., 296; *Dennison* v. *Read,* 3 Dana (Ky.) 586; *Wheeler* v. *Dascomb,* 3 Cush. (Mass.) 285; *Bergland* v. *Frawley,* 72 Wis., 559, 40 N. W., 372. Thus in *Bergland* v. *Frawley,* supra, it was said: "The premises in question were leased for the term of four months, and that term had not ex-

pired when the defendants re-entered and took possession thereof and removed and improved the hotel. They did so under the alleged stipulation in the lease that the plaintiff, or the plaintiff and Bostrom, should surrender the leased premises to the lessor, the defendant M. S. Frawley, whenever he desired to proceed with the contemplated improvement of the property. Such stipulation is not a condition, which, upon re-entry by the lessor, determines the lease, but a covenant, the breach of which does not determine the lease, but only gives the lessor a right of action to recover damages for such breach. . . . It is not claimed that there was a stipulation in the lease that Frawley might re-enter when he desired to improve the property, but only that in such contingency the lessee or lessees would surrender the leased premises.' "

The case of *Wheeler* v. *Dascomb,* 3 Cush. (Mass.), 285, was decided in 1849. The lease there construed contained the following clause:

"Said lessee doth agree to deliver up said premises, and all the buildings and repairs put on said premises by him on three months' notice, by said lessor paying him $250."

The lessor gave the three months' notice, and offered to pay the $250, insisting that by the terms of the lease a condition or a conditional limitation was created. The tenant insisted that the above agreement was a mere covenant. The question considered by the court was therefore whether the clause in question "is a covenant, or a limitation of the lessee's estate."

After stating that it would not help the plaintiff (the lessor) if the language did create a condition (since no right of re-entry was reserved for breach thereof), the

court proceeds to consider the question already stated above.

It is said that apt words of limitation would be such words- as "until," "during," "as long as," etc.  For example, land granted to a man "so long as he is parson of Dale, . . .  or if it is declared in the lease, that the same shall expire on the happening of any contingency. In such cases, whenever the contingency happens, the lease is determined by its own limitation, without any entry or other act to be done by the lessor.  2 Bl. Com. 155; 4 Kent. 132; *Fifty Associates* v. *Howland,* 11 Metc. (Mass.) 99, 102."

Stating that it was contended for plaintiff "that, by this notice and offer, the lease was determined by its own limitation, at the end of three months from the notice and offer". the court holds that the language in question is plainly merely a covenant, and not a limitation.

We think that the language in the present case would not, by its fair intendment, convey the idea of a limitation of the estate; and, as pointed out in *Wheeler* v. *Dascomb,* supra, it must be a conditional limitation as opposed to a condition, in order to benefit the petitioner, for no right of re-entry was reserved; nor has there been any re-entry.

It is not true, as the petitioner apparently assumes, that the tenant has the option to go or to stay when the leased premises are sold.  His consent to a sale is not necessary (16 R. C. L., p. 636, and authorities cited) ; and, on the other hand, the tenant cannot be deprived of his leasehold by such a sale (16 R. C. L., p. 634).

Hence, if he wished to vacate the premises when such a sale was made, the right would more naturally be em-

bodied in an agreement on the part of the landlord, or in the form of an express reservation on the part of the tenant. But we find merely an agreement on the party of the tenant to vacate the premises in 90 days, in the event of a sale, etc.

It is true that the case of *Sloan* v. *Cantrell,* supra, does not discuss the question of a conditional limitation, but deals with the question of re-entry for condition broken, and the failure of the lessor to reserve such a right of re-entry. It also deals with the case of a tenant who insisted upon keeping the premises, whereas in the present case the tenant is insisting that the lease is terminated, and that he has no rights thereunder.

But, in view of the language used in that case, and the authorities which we have reviewed; and bearing in mind the well-settled rule that in cases of doubt such clauses are construed to be covenants, rather than conditions or limitations, we think the court of civil appeals reached the correct result, and the decree of that court is affirmed.