[Civ. No. 15367.   Second Dist., Div. One.   Mar. 17, 1947.]

H. G. SCHULER, SR. et al., Respondents, v. LEO
BORDELON, Appellant.

James S. McKnight and W. L. Engelhardt for Appellant.

Newton E. Anderson, Arthur E. White and Montgomery G. Rice for Respondents.

WHITE, J.—This is an appeal by defendant from a judgment in favor of plaintiffs for the sum of $1,500 actual damages and $10 exemplary damages, rendered upon the verdict of a jury. By their complaint ''for damages for trespass'' plaintiffs alleged that prior to and on April 24, 1944, they were in lawful possession of certain garage premises at 1615 West 39th Place in the city of Los Angeles, where they were conducting a business of repairing and painting trucks, tractors and other mechanical equipment, and on which premises they kept tools, machinery and supplies; that by reason of the large size of the vehicles which they were repairing and painting it was necessary for them to utilize the whole of the floor space of the garage; that on April 24, 1944, the defendant, maliciously, forcibly and without the consent of plaintiffs, took possession of a portion of the floor space, removed plaintiffs' property from such portion, and built a partition walling off such portion from the remainder of the building, and thereafter excluded plaintiffs from such walled-off portion. It was further alleged that by reason of such exclusion plaintiffs were and ever since have been unable to conduct their business ''to any extent or at all''; that plaintiffs had suffered damages in loss of business and good will, loss of a contract with Coast Van Lines, and further loss through the conversion by defendant of certain personal property. The complaint also contained a prayer for punitive damages.

By his answer defendant asserted that he erected the partition with the consent of plaintiffs, denied the conversion of any property, and denied that plaintiffs had suffered any damage.

Defendant was the owner of the premises in question and plaintiffs had been his tenants therein for approximately two years under a month-to-month tenancy. The premises consisted of a portion of a garage approximately 24 by 23 feet, together with a concrete apron about 20 feet wide across the front of the building. Plaintiffs also occupied a garage at 1602 West 39th Place, where they conducted a general repair business.

At the outset it is conceded the verdict of the jury has finally determined, so far as this appeal is concerned, that the defendant took possession of the northerly one-third of the premises and excluded plaintiffs therefrom, without the consent of plaintiffs. The grounds upon which appellant seeks a reversal are that the evidence is insufficient to support a judgment for other than nominal damages and that the court erred in refusing to instruct the jury that in determining damages, the loss of profits, if any, to plaintiffs should be limited to one month (the tenancy being from month-to-month).

The plaintiff Howard Schuler, Jr., testified, ''Well, on our contract there were a number of smaller vehicles that were included, and it was a case of doing them all or none. It was necessary to have the entire portion inside. . . .''. H. G. Schuler, Sr., testified, ''Well, we tried to figure out whether the space was large enough that we could possibly use it, and we couldn't. It was too small, you just couldn't use it. . . .'' It was further testified by the younger Schuler that painting operations could not have been carried on after the erection of the partition; that as to the use of this inside portion with reference to the larger vans, ''it was necessary to remove the wheels and the hood and various things attached that we didn't want to spray, and take them to the inside for either refinishing or safekeeping, and so that was always used in connection with the work that was going on on the outside.'' He further testified that on the day the partition was erected he was to repair trucks Nos. 10 and 20 of Coast Van Lines,. and ''had to call up and tell them not to send them out.'' The equipment of Coast Van Lines was withdrawn from the premises about a week after the partition was put up. The younger Schuler testified that he searched for a suitable building in the vicinity, but that none was available; that about two weeks after the eviction he found a building a couple of miles away, ''but as it seemed the business was no longer with me, there was no use to get it.''

As to the work which had theretofore been done by plaintiffs on the premises in controversy, the plaintiff Howard Schuler, Jr., testified: ''We did work for individuals and mainly the King Van Lines of Oklahoma and National Van Lines here in Los Angeles, and Arlington.'' He further testified that no work was done for these firms after the ''tres-

pass'' or ''eviction.'' It also appeared from his testimony that eight units of Coast Van Lines (a unit consisted of one small vehicle; a larger vehicle, such as a van, being considered two units) had been completed during the several months preceding the eviction; that he had ''worked on every truck in the fleet and knew what work had been done and what needed to be done''; also that on the eight units theretofore painted and repaired they had done mechanical work such as brake relining and clutch repair; that it was customary in the business to reline brakes when the wheels were removed for painting.

The president and general manager of Coast Van Lines testified to the making of an oral agreement with the plaintiffs about the middle of April, 1944, for the painting of their vehicles at a price of $25 per unit, the paint to be furnished by Coast Van Lines, and the work to be performed at the convenience of Coast Van Lines as and when it could spare a vehicle from its business. He further testified that it was agreed that while in the process of painting a vehicle the plaintiffs should take care of anything necessary in the way of tightening the bodies, straightening fenders, or any mechanical work that would not entail too much delay. There were, at the time of the agreement, 28 units remaining to be painted.

It is urged by appellant that there is no evidence that his trespass prevented the performance of the contract with Coast Van Lines. It is pointed out that work on certain vehicles which were too large to go into the garage had to be done on the concrete apron and as to these vehicles the only purpose for which the garage was used was to store parts from the units being worked on. Appellant contends that there is no evidence that there was not sufficient space remaining in the garage to store these parts, nor any evidence as to how many vehicles were too large to go into the garage or how many could be painted inside the garage. ''In other words, there is no evidence from which the jury could conclude that the construction of the partition prevented the performance of the contract other than the conclusions of the two plaintiffs hereinbefore set forth.'' Appellant also makes the point that there was no direct testimony that the contract was terminated or cancelled. However, as above narrated, it does appear that no work was done after the eviction and Coast Van Lines removed its equipment. It also appears that subsequently Coast Van Lines purchased the spraying equipment of plain-

tiffs and did its own painting.  As to the practicability of continuing operations in the restricted area, the opinions of the two plaintiffs, experienced in their line of work and familiar with the problems involved in the particular job, constituted competent evidence; and it must be held that there was sufficient substantial evidence to support the implied finding of the jury that performance of the contract was prevented by the act of appellant.

It is next contended that the evidence does not show what period of time would have been required for the performance of the contract or the profits, if any, which would have been received thereunder.  This point may be considered in connection with the further contention that the court erred in failing to instruct the jury that in determining plaintiffs' loss of profits the same should be limited to one month.  The amount which could be realized from the painting work alone under the contract for 28 units at $25 per unit was $700.  Whether this amount would have been received within thirty days, six months or a year is immaterial, as the foundation of this action is the loss of the entire amount, caused by the sudden and unexpected loss of one-third of plaintiffs' operating premises.  The action sounds in tort, and the plaintiffs are entitled to recover, in addition to the value of the unexpired term, "compensation for whatever other loss results, including loss of profits, where a business is broken up, which can be ascertained with a reasonable degree of certainty and can properly be said to have been the natural or usual result of the breach and reasonably to have been within the contemplation of the parties as the probable result of a breach."  (32 Am.Jur. 249.)  "Injury to an established business conducted by the tenant on the premises may constitute an element of damages recoverable for an eviction, where the eviction amounts to a trespass, and the injury is the natural, probable, and proximate consequence of the wrong."  (36 C.J. 280.)

That loss of good will is a proper element of damage in a case such as this is indicated in *Landon* v. *Hill,* 136 Cal. App. 560, 566 [29 P.2d 281]; *Risdon* v. *Hotel Savoy Co.,* 99 Wash. 616 [170 P. 146]; and *Beckett* v. *City of Paris Dry Goods Co.,* 14 Cal.2d 633, 638 [96 P.2d 122].  The specific loss established by plaintiffs was the total loss of the contract with Coast Van Lines, as to which it was shown that at least $700 would have been realized, exclusive of compensation for making repairs.  To limit plaintiffs' recovery to what would

be realized within thirty days following the eviction would be in effect to deny any recovery. The basis of the action is not the loss of the unexpired term, but the damage to plaintiffs' business and good will by the sudden, unlawful eviction, which gave them no opportunity to make other arrangements to continue to perform their contract with Coast Van Lines. While ordinarily loss of profits is limited to profits which could have been made during the unexpired term (36 C.J. 284), damages to good will may be considered in addition to loss of profits. (*Landon* v. *Hill, supra.*) In the instant case it is true, as contended by appellant, that plaintiffs' profit during the remainder of the term from the Coast Van Lines' contract could not be determined with any accuracy, as the contract was to be performed at the convenience of Coast Van Lines as and when its vehicles could be spared. Nevertheless, there was substantial evidence that the loss of this contract was a proximate result of the wrong committed by appellant. It was within the province of the triers of fact to determine the loss suffered by respondents not only because of the cancellation of the Coast Van Lines contract, but the damage resulting to their business and the good will thereof occasioned by the sudden and unlawful eviction from part of the demised premises. Plaintiffs had built up a good will for their business which they might well have retained for themselves at another location had they been given the requisite notice of termination of the tenancy, thereby enabling them to advise their customers of their removal and the address at which they would continue business. Bearing all these factors in mind, it cannot be said that an award of $1,500 actual damages was either unsupported by the evidence or excessive.

▮ In determining the amount of damages that should be assessed against appellant herein, the jury was entitled to estimate as best they could from the evidence before them, the loss sustained by respondents in the cancellation of the Coast Van Lines contract, the loss of other business, as well as the good will thereof. Undoubtedly, in cases like this entire accuracy is impossible, and some difficulty is encountered in accurately assessing the damages resultant from appellant's wrongful eviction of respondents, but it must not be forgotten that such difficulty would have been avoided had appellant taken care that no occasion should arise through his tort requiring such assessing of damages.

▮ Finally, appellant assigns as error the refusal of the

court to give three proffered instructions on the measure of damages should the jury find in favor of respondents. These instructions were properly refused because by them the jury would have been advised that damages were limited to the amount of profits which could have been made during the unexpired term of one month, when as we have herein pointed out, in a tort action such as the instant one a plaintiff is entitled to recover whatever loss results from the unlawful eviction which with a reasonable degree of certainty can be ascertained and which can properly be said to have been the natural or usual result of the tort.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.