[Civ. No. 14319. First Dist., Div. Two. Aug. 21, 1950.]

LES JOHNSON, Respondent, v. BELLA SNYDER, Appellant.

Gladstein, Andersen, Resner & Sawyer and Lloyd E. McMurray for Appellant.

Hoey, Hoey & Fenstermacher and Sam W. Hall for Respondent.

DOOLING, J.—Defendant appeals from a judgment for plaintiff based on a finding of constructive eviction. Defendant is the owner of a building in Pittsburg designed as a market building for the occupancy of several tenants. Plaintiff rented a stall in this building for the conduct therein of the restaurant business. The other tenants of the building, except a retail liquor dealer, for reasons undisclosed quit the building. The building was allowed to become dirty and unsanitary and as a result the city health inspector ordered plaintiff to close his restaurant business which plaintiff did,

removing his fixtures from the premises. A brief excerpt from the testimony of the city inspector will point up the discussion of the case. The inspector testified:

"They moved out and left everything just as it was. That is what I mean. They left their vegetables and bread and everything contained in a grocery store in the building. I asked Mrs. Snyder several times if she couldn't clean up the building, because after all, if it stood very long and stayed in the building very long, it would attract flies and rodents and gnats, etc., and being there is a restaurant in the building where they serve food, we had to keep the entire building clean. Mr. Johnson's restaurant itself, we found, was always in a satisfactory condition, that is, his little corner of it. But, as time went on, day to day, these vegetables started to decay, and each day that we visited the place we found it in a worse condition than it was the day before, and this went on for about a week. The dust in the building was getting terrible. You could rub you hand over any fixture in there and your hand would come out black. And the floor was in a horrible condition. I tried to prevail upon Mrs. Snyder many, many times, and every time I went to the building I made it a point to take Mrs. Snyder with me, and her answer was the same every time. . . . She had no interest in the restaurant. She didn't care how the building was. And if Mr. Johnson didn't like the condition he would have to move or not. It was immaterial to her whether they had a restaurant in the building or not. So, they went on for about four or five days, and the flies and gnats got so terrible we just had to take drastic steps and close the restaurant."

We are satified that this evidence supported the finding of a constructive eviction. "Any interference by the landlord by which the tenant is deprived of the beneficial enjoyment of the premises amounts to a constructive eviction if the tenant so elects and surrenders possession. . . ." (*Kulawitz* v. *Pacific etc. Paper Co.*, 25 Cal.2d 664, 670 [155 P.2d 24]; *Aaker* v. *Smith*, 87 Cal.App.2d 36, 46 [196 P.2d 150]; 15 Cal.Jur. 679.)

Where the landlord leases part of a building and permits unsanitary conditions amounting to a nuisance to exist in the portion of the building remaining under his control which operate to deprive the tenant of his beneficial enjoyment the tenant may treat this as a constructive eviction. (*Ray Realty Co.* v. *Holtzman*, 234 Mo.App. 802 [119 S.W.2d 981] and cases cited at pp. 984-985 [119 S.W.2d]; *Washington Chocolate Co.*

*v. Kent,* 28 Wn.2d 448 [183 P.2d 514] and cases cited at pp. 516-517 [183 P.2d]; *Everson* v. *Albert,* 261 Mich. 182 [246 N.W. 88]; *Blaustein* v. *Pincus,* 47 Mont. 202 [131 P. 1064, Ann.Cas. 1915C 405]; 52 C.J.S., Landlord and Tenant, sec. 458, p. 175; and *cf. Riechhold* v. *Sommarstrom Invest. Co.,* 83 Cal.App. 173 [256 P. 592]; *McDowell* v. *Hyman,* 117 Cal. 67 [48 P. 984].)

The fact that the nuisance occurred in a portion of the building over which (after the other tenants departed) the landlord had exclusive control distinguishes the cases relied upon by appellant having to do with conditions arising in the premises occupied by the tenant himself under his lease. ▇ The covenant of plaintiff in the lease to comply with all the requirements of municipal, state and federal authorities "pertaining to said premises" referred only to the premises let to him and put on him no duty to enter stalls as to which he had no right of occupancy to abate the nuisance which his landlord was there permitting to exist. ▇ Nor did the fact that the appellant had expressly covenanted to furnish janitor service in the aisles and passageways operate to excuse the maintenance of a nuisance in other parts of the premises which were under appellant's exclusive control. The wilfulness of appellant's conduct is attested by her statement, as testified to by the inspector that "if Mr. Johnson didn't like the condition he would have to move."

The court allowed three items of damages: $450 advance payment of rent; $400 for the cost of removing the fixtures of the restaurant; and $500 for loss of good will.

▇ Upon eviction plaintiff was entitled to recover the $450 advanced for future rent, under the unjust enrichment doctrine. (*Everson* v. *Albert, supra,* 246 N.W. 88, 90; *Henry Rahr's Sons Co.* v. *Buckley,* 159 Wis. 589 [150 N.W. 994, 996]; *Schienle* v. *Eckels,* 227 Pa. 305 [76 A. 15].)

▇ Loss of good will is a proper item of damage. (*Schuler* v. *Bordelon,* 78 Cal.App.2d 581 [177 P.2d 959] and cases cited at p. 585.) There was no direct evidence of the value of the good will of the business, but it had been netting the plaintiff $200 per month and as said in *Schuler* v. *Bordelon, supra,* at page 586: "In determining the amount of damages . . . the jury was entitled to estimate as best they could from the evidence before them . . . the good will . . . ." That court added: "Undoubtedly, in cases like this entire accuracy is impossible, and some difficulty is encountered in ac-

curately assessing the damages . . . but it must not be forgotten that such difficulty would have been avoided had appellant taken care that no occasion should arise through his tort requiring such assessing of damages.''

''One whose wrongful conduct has rendered difficult the ascertainment of the damages cannot escape liability because the damages could not be measured with exactness.'' (*Zinn* v. *Ex-Cell-O Corp.*, 24 Cal.2d 290, 297-298 [149 P.2d 177].)

■ It might be difficult to get opinion evidence of the value of the good will of a small restaurant netting the owner $200 per month including compensation for his own labor, but the court certainly did not exceed the bounds of discretion in fixing a value of $500 for that item, a value upon which a purchaser would recoup his investment in two and one-half months. (*Cf. Elsbach* v. *Mulligan*, 58 Cal.App.2d 354, 365, 367 [136 P.2d 651].)

■ There is no express testimony of the cost of removing the fixtures but for services of a commonplace or nontechnical character the trial judge can call on his own general knowledge of their value. (*Estate of Reinhertz*, 82 Cal.App.2d 156, 160 [185 P.2d 858, 186 P.2d 755] and cases cited.)

The trial judge filed a memorandum in which he stated concerning this item: ''Being evicted he had to get out with no opportunity to dispose of his fixtures in the place. The lease being ended he had to remove and is entitled to a reasonable award for this purpose. From the facts proved it is not an unwarranted inference that the sum of $400 is reasonable in this respect.''

Judgment affirmed.

Nourse, P. J., and Goodell, J., concurred.