[Civ. No. 8169. Third Dist. Aug. 14, 1953.]

FRANK P. ROSS, Respondent, v. FRANK W. DUNNE COMPANY (a Corporation), Appellant.

Brace & McDonald and Lewis P. May for Appellant.

Robert E. Laughlin for Respondent.

SCHOTTKY, J.—Plaintiff and respondent commenced an action against defendant and appellant for damages for alleged breach of contract. The complaint alleged that defendant had granted plaintiff an exclusive distributorship for the sale of its "Color Suited System" in the territory extending from Marysville to the Oregon border, excluding Oroville; that in reliance on this, plaintiff ordered products costing approximately $2,000 from defendant which he distributed to his dealers, and took orders for the product from other

customers in the territory; that contrary to the terms of the agreement defendant has failed and refused to enter into a formal distribution agreement with plaintiff, and failed and refused to fill further orders by plaintiff; that defendant has failed and refused in every respect to comply with the terms of the agreement. The complaint further alleged and prayed for damages as follows:

$150.00 for picking up and taking back orders of paint sold to dealers in the territory;

$100.00 for repacking and returning the products to defendant;

$450.00 for loss of profit caused from having to cancel a contract to supply the product to Mobilhomes Company to be used in painting nine houses;

$500.00 for loss of customers, business prestige and good will caused from his inability to distribute the product to them, as agreed.

Defendant and appellant filed an answer denying the material allegations of the complaint and also filed a cross-complaint alleging that $921.90 was owing from plaintiff to defendant for products sold.

Following a trial by the court without a jury, the court found substantially in accordance with the allegations of the complaint and judgment was rendered in favor of plaintiff for $930 damages, and for defendant on its cross complaint for $921.90, leaving plaintiff a balance of $8.10. Defendant has appealed from said judgment.

Before discussing the contentions urged by appellant for a reversal of the judgment, we shall summarize briefly the factual situation as shown by the record, bearing in mind the familiar rule that all conflicts must be resolved in favor of the respondent and all reasonable inferences must be drawn to uphold the judgment.

Respondent was a distributor of Pabco paints and allied items. He served a territory from Marysville north to the Oregon border, his office being in Chico.

Appellant was a manufacturer of paints and produced a product known as the "Color Suited System." This system consisted of a set of color cards with tubes of paint dyes, plus two base paints. When a given shade was desired the tube specified on the color card was mixed with a base paint, there being only two base paints needed to produce any color.

On March 21, 1950, a salesman of appellant called upon respondent for the purpose of inducing him to handle this

"Color Suited System." After preliminary negotiations were had the following contract was dictated by appellant's salesman to an employee of respondent, and signed by the salesman and respondent: "March 21, 1950

"The following is an agreement between the Dunne Paint Company and Ross Distributing Company. It is agreed that the Dunne Paint Company will supply the Color Suited System and other products that Ross Distributing Company may require at a distributors cost. It is further agreed that Dunne Paint Company will not interfere in the present set up of Pabco distribution. That the products ordered are solely up to the discretion of the Ross Distributing Company.

"The Ross Distributing Company is to cover a territory extending from Marysville north to the Oregon border with the exclusion of the Oroville territory already serviced by a Dunne dealer.

"The Dunne Company agrees to cooperate in the promotion of sales, advertising and the supplying of all sales ammunition for the furtherance of sales for the Ross Distributing Company.

"The Dunne Company will forward their distributorship agreement stating terms, discount, advertising and termination policy.

> "Frank P. Ross (Signed)
> Ross DISTRIBUTING COMPANY
> "Gerald S. Berry (Signed)
> DUNNE PAINT COMPANY"

At the time of the signing of the contract Pabco did not have a "Color Suited System" or anything like it. Pabco and appellant, however, were competitors in the area in respect to some of their other products. Apparently respondent forwarded notice to Pabco that he was entering into this contract, since if he carried a product of another company which was manufactured by Pabco, Pabco would take away his distributorship.

Pursuant to the signing of the contract respondent ordered four or five sets of the system. These were subsequently sold to respondent's dealers who were already carrying a Pabco line of other products. In further reliance upon the agreement respondent set up five dealerships for the "Color Suited System" and generally promoted the sales of the product.

At the time of the signing of the contract discussion was had about the discount referred to in the contract, the dis-

tributorship agreement, and the territory to be given respondent. The distributor's discount caused some dispute between the parties subsequent to the signing of the contract, but apparently was settled to the satisfaction of all involved. The appellant, however, did not present the distributorship agreement to respondent, so it was never executed by the parties. Neither did appellant provide respondent with a map specifically outlining the territory alloted to respondent, although a map was used by the parties to mark on subsequent to the making of the agreement.

During the period following the execution of the above contract, appellant itself made a direct sale to a dealer within the territory alloted respondent. This sale was to the Topsol Company.

During the first four months following the signing of the above contract the parties apparently had minor disagreements over their deal. On July 18, 1950, a conference was had between respondent and appellant's agents wherein it was made clear that the appellant was not going to proceed on the basis of a distributorship agreement with respondent. It was determined by the parties at the conference that respondent would bring in all the unsold paints in his warehouse and dealers' hands, and pack and ship them back to appellant. At this time respondent admittedly owed appellant $930 for materials furnished by appellant to respondent.

Additional facts will be detailed in the course of this opinion.

Appellant's first contention is that the writing hereinbefore set forth was not a valid, binding contract because it was merely an agreement to agree, a "will, wish, want or desire" arrangement. Appellant argues that such writings "are lacking in mutuality and therefore are not binding so long as they remain executory," citing *California Ref. Co.* v. *Producers Ref. Corp.*, 25 Cal.App.2d 104, in which this court said at page 107 [76 P.2d 553] :

". . . It is uniformly held that a contract which reserves in either party an option to deliver or to accept personal property, or which contracts for future delivery of personal property, the quantity of which delivery is dependent upon the will, wish, want or desire of the other party, is void for lack of consideration and mutuality. (*Gordon* v. *Emerson Shoe Co.*, (Tex. Civ. App.) 242 S.W. 791.)

"In the case of *Foley* v. *Euless,* 214 Cal. 506 [6 P.2d 956], a contract for processing, boxing and marketing of Thompson

seedless grapes, very similar to the present agreement chiefly because of the omission of a direct promise to deliver the property, was held to be void for lack of consideration because it was not mutually binding on the respective parties."

Respondent in reply argues that the agreement constitutes and was intended to constitute a present and existing agreement, and not merely an agreement to agree in the future; that it contains the essential terms and conditions of a distributorship contract, from which can be ascertained the contemplated territory, the price, the materials to be furnished, and cooperation by appellant in sales promotion, and that it is apparent that the parties intended the agreement to be binding, since respondent made a substantial order for merchandise on the strength of the agreement, which was accepted by appellant.

The trial court was of the opinion, and so found, that the contract was a valid, binding, contract and we believe that the record supports such finding.

By the terms of this contract the parties are clear—definite and certain. The subject matter appears to be definite and certain, to wit, a distributorship for the "Color Suited System" and allied paint products. The price of the products to respondent is stated to be "at a distributors cost." There apparently was a conflict over what was "distributors cost."

While on the face of the contract the price appeared to be clear, appellant maintains the phrase "distributors cost" did not mean what it appeared to signify. This phrase may be considered "technical," and technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense. (Civ. Code, § 1645; 6 Cal.Jur., Contracts, § 176.) When words having a technical or local significance appear, evidence explanatory of them is admissible, not for the purpose of adding to or qualifying, or contradicting the contract, but for the purpose of ascertaining it, so as to enable the court to interpret it according to the actual intention of the parties, and law and usage of the place where it is to be performed. (6 Cal.Jur., Contracts, § 176.) The trial court heard the testimony explaining the phrase, and held that the contract was valid—necessarily implying that the price was definite and certain, or at least capable of being made definite and certain. We should not disturb this determination, since the record supports it.

The "quantity" called for by the contract was "products that Ross Distributing Company may require . . .." The contract further provided: "That the products ordered are solely up to the discretion of the Ross Distributing Company." Appellant contends that this wording constituted the contract a "wish, want or desire" arrangement, and therefore the contract was lacking in mutuality because of this illusory obligation on respondent. ▮ It is true that a contract which reserves in either party an option to deliver or to accept personal property, or contracts for future delivery thereof, the quantity of which delivery is dependent upon the will, wish, want or desire of the other party, is void for lack of consideration and mutuality. (4 Cal.Jur. 10-Yr.Supp. (1943 Rev.), Contracts, § 139; *California Ref. Co.* v. *Producers Ref. Corp., supra,* per Thompson, J.) ▮ However, when a vendee agrees to buy what he needs (requires) of a certain product, and the vendor absolutely promises to sell, a binding contract is made. Such a contract imposes upon the vendee the duty of buying what he requires from the vendor and upon the latter the obligation to sell to him at the contract price. (4 Cal.Jur. 10-Yr.Supp. (1943 Rev.), Contracts, § 139; *Andersen* v. *La Rinconada Country Club,* 4 Cal.App.2d 197 [40 P.2d 571].) ▮ The contract states: "It is agreed that the Dunne Paint Company [vendor] will supply the Color Suited System and other products that Ross Distributing Company may require," and that "the Ross Distributing Company is to cover a territory extending from Marysville north to the Oregon border with the exclusion of the Oroville territory already serviced by a Dunne dealer."

We believe that taking the agreement as a whole, it was properly construed by the court as one in which appellant agreed to give respondent the exclusive right to market and distribute appellant's Color Suited System in the territory mentioned in the agreement and as one which also bound respondent to purchase from appellant all of said products required by it as a distributor in said territory.

Appellant next contends that the contract was cancelled, mutually rescinded or abandoned on either May 5, 1950, or July 28, 1950. ▮ The question of whether a contract has been cancelled, rescinded or abandoned is a mixed question of law and fact (*Jones* v. *Noble,* 3 Cal.App.2d 316 [39 P.2d 486]; *Thompson* v. *Municipal Bond Co.,* 23 Cal.App.2d 402 [73 P.2d 274]) which is addressed to the trial court (*Sessions* v. *Meadows,* 13 Cal.App.2d 748 [57 P.2d 548]; *Lohn* v.

*Fletcher Oil Co., Inc.*, 38 Cal.App.2d 26 [100 P.2d 505]) and the finding of the trial court will be upheld if it is supported by substantial evidence.

In the instant case there was conflicting evidence upon this issue. The record shows that the parties carried on their dealings after May 5, 1950, the first alleged date of cancellation or rescission. This being the case, there could hardly be said to have been a cancellation or rescission.

In regard to the events on July 28, 1950, the record shows that the parties did terminate their dealings, but respondents did so only because appellant failed and refused to live up to the agreement. This does not appear to amount to a mutual cancellation, rescission or abandonment.

As stated in *Katzenbach & Bullock Co. v. Breslauer*, 51 Cal.App. 756, 757 [197 P. 967]:

"Some point was made by appellant that it had been mutually agreed between the parties that the contract should be canceled, abandoned, and rescinded. The trial court found, upon conflicting evidence, that it was not so agreed and that said contract was never canceled, abandoned, and rescinded. We are, therefore, not at liberty to go into this question of fact."

Appellant next contends that even assuming that there was a valid contract, and that appellant violated its terms by the sale to another distributor within respondent's territory, still there was not a sufficient breach to justify a termination of the contract or the court's consequent finding of damages. However, there is evidence to show that appellant failed and refused to forward and execute the formal distributorship agreement, failed and refused to furnish a map specifying the territory, and sold its products to Topsol Company within the territory allotted to respondent. However, respondent himself admits that appellant never refused to ship paint to him so that he could fill his orders. But appellant would fill them only on terms different from those called for by the contract. There is also evidence showing that the products were taken back from respondent at appellant's request, not respondent's. Appellant admits it refused to sign the formal agreement, send the map, desist from selling to other dealers within respondent's territory, and that it offered to take back the unsold products. Appellant's conduct indicates that it was not going to live up to this "exclusive agreement," so from the evidence in the record it can be said that the findings of the trial court on the materiality of the breach

as warranting a termination of the contract and an award of damages are substantially supported by the foregoing cited testimony.

Appellant also contends that the court's findings on the various items of damages are not supported by the evidence or the law.

Once a breach of contract has been proven, nominal damages are presumed to follow as a conclusion of law. (8 Cal. Jur., Damages, § 7.) Generally, the rule as to the measure of damages for breach of contract is the actual loss sustained. (8 Cal.Jur., Damages, § 78.) The Civil Code, section 3300, provides more specifically for the measure of damages for breach of contract:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

Appellant first attacks the award of $250 given respondent "for picking up and taking back orders of said paint and products and for repacking and retabulating the same." First, damages for this type of item seem to be allowed by law. By refusing to allow respondent the exclusive distributorship, respondent had no alternative but to pick up orders of its dealers for the products, and return all of the products for credit. But for this breach respondent would not have been put to the expense of picking up and cancelling back orders, and repacking, retabulating, and shipping back to appellant the products it had on hand at its dealers' places of business. The expense entailed in this procedure would, therefore, seem to be a detriment proximately caused by the breach. Respondent should, under Civil Code, section 3300, be compensated for this detriment.

Appellant contends that the award of $250 damages for this item was arbitrary and that there was no evidence to support it. While it is true that damages must be capable of being ascertained with some reasonable certainty, and must not be based on pure speculation or conjecture (8 Cal.Jur., Damages, § 23; Civ. Code, § 3301), it is also true, as stated in *Estate of Reinhertz*, 82 Cal.App.2d 156, at page 160 [185 P.2d 858, 186 P.2d 755], that "In the case of services of a nontechnical nature, such as here involved, the judge may fix the value from a description of the services per-

formed bringing to bear his own general knowledge and is not necessarily bound by express evidence of the value of the services performed. [Citing cases.]'' And as stated in *Johnson* v. *Snyder*, 99 Cal.App.2d 86, at page 90 [221 P.2d 164]: "There is no express testimony of the cost of removing the fixtures but for services of a commonplace or nontechnical character the trial judge can call on his own general knowledge of their value. (*Estate of Reinhertz*, 82 Cal.App.2d 156, 160 [185 P.2d 858, 186 P.2d 755] and cases cited.)'' See, also, *Parmalee* v. *Bartolomei*, 106 Cal.App.2d 68, 73 [234 P.2d 1019].

Here the trial court had before it evidence of the size of respondent's territory, and the effort required to render this nontechnical service. It also had before it evidence of the part time salary of one of respondent's employees, who at the time in question was working for respondent full time and undoubtedly earning a larger salary. Under these circumstances it cannot be said that the trial judge, in assessing the sum of $250 for this item of damage, abused his discretion or made an unreasonable award of damages for this nontechnical service based upon the evidence and his own general knowledge of its value.

Appellant next attacks the court's award of $382 to respondent for loss of profits that would have been earned by a sale of the products to Mobilhomes as unsupported by the evidence. Loss of profits, present or future, are recoverable upon a breach of contract if it can be shown that they are the direct and natural consequences of the breach. (8 Cal.Jur., Damages, § 36.) Here respondent proved that it had a contract with Mobilhomes to furnish it appellant's product to paint nine houses. There was testimony to the effect that respondent's profits would be between $45 and $50 per house. The testimony further showed that this particular product, the Color Suited System, was placed in the Mobilhomes office, and that buyers of the homes selected the paint colors from the color charts and chips pertaining to the Color Suited System. This product could not apparently be duplicated since the colors of other paints would vary from the colors selected by the Mobilhomes Corporation. Figuring nine houses at $45, a total of $405 is reached; the court awarded $382. Thus the evidence is sufficient to support the amount awarded.

Appellant finally attacks the item of $300 awarded by the trial court as damages sustained by respondent for loss of

effort and time in setting up dealerships and promoting the sale of appellant's product, and loss of customers and good will. That the loss of good will is a proper element of damages is not to be doubted. (*Landon* v. *Hill*, 136 Cal. App. 560 [29 P.2d 281]; *Beckett* v. *City of Paris Dry Goods Co.*, 14 Cal.2d 633 [96 P.2d 122].) However, appellant asserts that there is no evidence to support the finding of the amount of $300 for loss of good will, etc. The court in *Schuler* v. *Bordelon*, 78 Cal.App.2d 581 [177 P.2d 959], answered a similar contention by stating, at page 586:

". . . In the instant case it is true, as contended by appellant, that plaintiffs' profit during the remainder of the term from the Coast Van Lines' contract could not be determined with any accuracy, . . .. Nevertheless, there was substantial evidence that the loss of this contract was a proximate result of the wrong committed by appellant. It was within the province of the triers of fact to determine the loss suffered by respondents not only because of the cancellation of the Coast Van Lines contract, but the damages resulting to their business and the good will thereof. . . .

. . . . . . . . . . . .

"In determining the amount of damages that should be assessed against appellant herein, the jury was entitled to estimate as best they could from the evidence before them, the loss sustained by respondents in the cancellation of the Coast Van Lines contract, the loss of other business, as well as the good will thereof. Undoubtedly, in cases like this entire accuracy is impossible, and some difficulty is encountered in accurately assessing damages . . . but it must not be forgotten that such difficulty would have been avoided had appellant taken care that no occasion should arise through his tort requiring such assessing of damages."

 Again, "One whose wrongful conduct has rendered difficult the ascertainment of the damages cannot escape liability because the damages could not be measured with exactness." (*Zinn* v. *Ex-Cell-O Corp.*, 24 Cal.2d 290, 297 [149 P.2d 177].) Here the trial judge had before him evidence of the efforts expended by respondent in promoting the sale of appellant's product. The trial judge also had before him the number of units of the Color Suited System sold by respondent and his gross profit thereon. Taking the $139 gross profit made by respondent from the sale of appellant's product while respondent was in business, plus the $300 awarded by the trial judge for loss of effort and good

will, it cannot be said that such award was unreasonable under the evidence of the case or amounted to an abuse of discretion under the wide latitude of discretion vested in the trier of fact to assess damages in this type of case. The total award would be slightly more than $100 per month for the four months respondent considered the contract in force, not to mention the loss that would be sustained in the future, since it was over one year before respondent was able to replace a product similar to appellant's in his customers' places of business.

No other points raised require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.