[Civ. No. 21089. Second Dist., Div. Three. Nov. 20, 1956.]

ROBERT M. NEWELL, Appellant, v. GERTRUDE B. NEWELL, Respondent.

GERTRUDE B. RALPHS, Respondent, v. ROBERT M. NEWELL, Appellant.

*Assigned by Chairman of Judicial Council.

Ernest J. Zack for Appellant.

Glenn A. Lane for Respondent.

VALLÉE, J.—Appeals from identical orders with respect to the custody and support of three minor children made in two actions.

On August 17, 1953, Robert M. Newell, to be referred to as the father, brought an action for divorce against Gertrude B. Newell, now Gertrude B. Ralphs, to be referred to as the mother, in the Superior Court of the County of Los Angeles. On August 22, 1953, the mother brought an action for divorce against the father in the County of Gooding, State of Idaho. Simultaneously with the filing of the complaint the Idaho court restrained the father during the pendency of that action from molesting the mother, entering her home, interfering with the custody of the children, and from taking the children out of Idaho. The father made a general appearance in the Idaho action. On September 25, 1953, the superior court in the California action issued an order restraining the mother from taking any further proceedings in the action filed by her in Idaho. The mother and the children were in Idaho at that time and she was there served with process issued in the California action. She did not appear in the latter action. On September 25, 1953, the father was granted an interlocutory decree of divorce by default. The court found the mother was not a fit and proper person to have custody of the three minor children, awarded their custody to the father, and ordered the mother to deliver their custody to him. She did not comply with the order; she proceeded with the Idaho action.

On January 15, 1954, the father appeared personally and testified in the Idaho court at a hearing on his application for temporary custody of the children and temporary use and possession of the family automobile. At the conclusion of that hearing the court made an order denying his application for custody of the children and granted him temporary custody of the automobile.[1]

---

[1]The father testified at the hearing: ''I would like to have one car to use in my work in Los Angeles, and the car I would want it to still be subject to the jurisdiction of this Court, the rights in the car, whether

On June 11, 1954, the mother filed a petition in the superior court of the County of Los Angeles seeking a subpoena and subpoena duces tecum in order to take depositions of witnesses for use in the Idaho action. In that proceeding the court restrained her from prosecuting the Idaho action; from taking any deposition of any person for use in the Idaho action; and from taking any steps in any court in any state other than California leading to a determination of the rights of custody of the minor children. The mother appealed from that order. The Supreme Court dismissed the appeal as moot, saying:

"The briefs filed by the parties in answer to our questions show that Gertrude, plaintiff and appellant here, received an Idaho decree of divorce on August 31, 1954, which was affirmed by the Supreme Court of Idaho on February 27, 1956. It follows, therefore, that the provisions of the restraining order prohibiting her from seeking a decree of divorce in Idaho are no longer an issue. It also appears that there is no action pending in Idaho in which depositions of California witnesses would be needed. In answer to our question concerning the order presently in effect concerning the custody of the minor children of the parties, we are advised that on March 16, 1955, two identical custody orders were made by the Superior Court of Los Angeles County in which legal custody was awarded jointly to the parties. These two orders supersede the custody provision of the order which is the

---

the Court follows the California judgment or not. I have generally appeared in Idaho, the car will be before the Court to decide."

On August 31, 1954, the Idaho court adjudged the father to be in contempt for selling the automobile in violation of the order of January 15. That order permitted him to purge himself of the contempt if within 30 days he returned the automobile to the custody of the court or paid the mother $825. In *Newell* v. *Sutphen*, 76 Idaho 148 [279 P.2d 405], decided January 24, 1955, the father obtained a writ of review to test the validity of the contempt order. The court quashed the writ, saying that the contempt proceeding should stand or fall dependent on the final determination of the question of jurisdiction of the trial court. The trial judge was enjoined from carrying out the execution of any judgment of fine or imprisonment relative to the automobile, the court saying (279 P.2d 408): "Such restraining order will not prohibit the trial court in proceeding to judgment in the pending contempt proceedings or other contempt proceedings in the divorce action."

The father did not purge himself and on February 9, 1955 the court found that "by deliberate misrepresentation and falsehood said Robert M. Newell by a deceit upon the process and proceedings of this Court obtained possession of said Buick Station Wagon and removed the same from the jurisdiction of this Court in deliberate violation of the order of the Court of January 15, 1954, and in direct countervention of his statement to the Court," adjudged him guilty of contempt, and decreed that he "be fined $500.00 and sentenced to five (5) days imprisonment in the County Jail of this County for said contempt of this Court."

subject of this appeal. There are appeals presently pending in the District Court of Appeal from the orders of March 16, 1955.

"We conclude, therefore, that there is no issue involved in this appeal which requires a determination by this court." (*Newell* v. *Newell*, 46 Cal.2d 861, 862 [299 P.2d 849].)

The Idaho action was tried July 12, 1954. The parties there stipulated the children were corporeally in Idaho in the care of the mother; and the mother "is a fit and proper person to be awarded the custody of the children, if the Idaho court has jurisdiction to make a custody award to her." On August 31, 1954, the mother was granted a final decree of divorce by the Idaho court. The judgment awarded her custody of the children and ordered the father to pay her $225 a month for their support. The court found on undisputed evidence the mother had conformed to Idaho's residence requirement before bringing her action for divorce; and while substituted service in the California action was made on her in Idaho, she did not appear or in any manner participate in the California action. The judgment contained the adjudication set out in the margin.[2] The father appealed from the Idaho judgment. The Supreme Court of Idaho affirmed, saying in part:

"[The interlocutory decree granted the husband on September 25, 1953] shows on its face that it attempted to operate in personam as to custody of the children; whereas the findings in said action show that not only was respondent in Idaho at the time of service of summons upon her but also that the children were with her. Such judgment insofar as it attempts to operate in personam was and is void and subject to collateral attack since it was made and entered without the court having obtained jurisdiction of the person of re-

---

[2] "It Is Further Ordered, Adjudged and Decreed that the Court has considered and recognized the interlocutory decree of divorce made and entered in the Superior Court of the State of California in and for the County of Los Angeles, Pasa-D-11260 on or about September 25, 1953, between the parties hereto and that the same be, and hereby is, declared and decreed to be interlocutory, ex parte or default, not final and on substituted service and is not res judicata or entitled to full faith and credit;

"It Is Further Ordered, Adjudged and Decreed that the Court has considered and recognized the restraining order in the special proceeding in said *California Court, No. 629775* [the proceeding in which the Supreme Court of California dismissed the appeal], and the same be, and hereby is, declared and decreed to be not final and to have been issued without jurisdiction, not responsive to or within the special proceeding involved, not res judicata, not entitled to full faith and credit, and is a nullity."

spondent. An inspection of the judgment roll in said action, without further evidence, shows such portion of the judgment to be void for the reasons aforesaid. . . .

"Substituted service is ineffective to confer jurisdiction as to the personal rights and liabilities of the defendant. . . .

"A judgment wholly or in part in personam may not be awarded against a nonresident not personally served within the court's jurisdiction and not voluntarily appearing. . . .

"The trial court properly made inquiry into the jurisdiction of the California court in which the judgment was rendered, and into the facts necessary to give jurisdiction. . . .

"Respondent [the mother] produced as one of her witnesses an attorney at law, admitted to practice and for many years a practitioner in the courts of the State of California. He testified concerning the California law applicable to the proceeding, Case No. 629775, wherein respondent made application for a commission and subpoena to take depositions in that state for use in her Idaho divorce action; that such is a special statutory proceeding in which the court exercises no equity jurisdiction, nor any power beyond the scope of the application. 'Special proceedings established by statute must strictly follow the statute, and a court sitting therein has no general or equitable jurisdiction.' 1 Cal.Jur.2d 635. The California court, after hearing respondent's said application, made a minute entry granting appellant's motion 'to quash subpoenae and subpoenae duces tecum . . . , and plaintiff is restrained from taking depositions in this county to be used in the Idaho proceedings.'

"The trial court then found, in accordance with the aforesaid evidence, which was undisputed, that appellant [the father], in spite of and in disregard of such minute entry, prepared and had signed an order, without notice and without findings or conclusion of law, and in such special proceeding, the additional injunctive order directed against respondent restraining her from proceeding further in her Idaho divorce action, contrary to the California law, Cal. Code Civ. Procedure, secs. 632 and 634; Rule 19, Superior Courts of California; *Kaliterna* v. *Wright,* 94 Cal.App.2d 926 [212 P.2d 32]. The trial court then further found that at the time appellant obtained the California interlocutory judgment and at the time he obtained the restraining order, upon which he relies, he well knew that the Idaho trial court August 26, 1953, had issued its injunctive order (served upon appellant September 14, 1953), restraining him from molest-

ing respondent or interfering with her custody and care of the minor children, and that he well knew said children were in respondent's care in the State of Idaho. The restraining order, being not responsive to, nor within the issues of, such special proceeding, was not entitled to full faith and credit and therefore was and is a nullity; the trial court properly so ruled and decreed.'' (*Newell* v. *Newell,* 77 Idaho 355 [293 P.2d 663, 668-669].) The Supreme Court of the United States denied the father's application for certiorari. (U.S. Supreme Court Docket No. 281, October 15, 1956.)

On November 6, 1954, the mother married Ralphs. In January 1955 she came to Los Angeles. On application of the father in the California action, she was cited for contempt for not delivering custody of the children to him pursuant to the interlocutory decree and in not complying with the restraining order with respect to proceeding with the Idaho action. On February 8, 1955, after hearing, the court found the mother in contempt as to both counts, sentenced her to five days in jail, and suspended the sentence on condition she deliver the children to the father forthwith. She immediately complied with the order, and the court in the same order purged her of contempt.

In January 1955 the mother filed an action in the Superior Court of the County of Los Angeles, praying that the Idaho judgment be established as a foreign judgment and that it be enforced; that it be adjudged that the father owed her $3,013.15 with interest under the Idaho judgment; and for attorneys' fees and costs.

On February 17, 1955, the mother applied to the superior court for an order modifying the provision of the interlocutory decree which awarded custody of the children to the father and to award their custody to her. She also asked that the father be ordered to pay her a reasonable sum for the support of the children and for attorneys' fees and costs. She filed a similar application in the action to establish the Idaho judgment, praying for custody and support for the children, attorneys' fees and costs pendente lite. The two applications were consolidated for hearing. After an extended trial before the same judge who had originally made the order awarding custody of the children to the father, who found the mother to be in contempt and who had purged her of contempt (see *Primm* v. *Primm,* 46 Cal.2d 690, 696 [299 P.2d 657]), the court on March 16, 1955, made an order in the divorce action that the mother and the father are each fit

and proper persons to have the custody and control of the children; awarded legal custody to the parties jointly, with physical custody to the mother during the school year and half of vacation periods, and ordered the father to pay $225 a month for the support of the children during the time they are to be in the physical custody of the mother. The mother's application for attorneys' fees and costs was denied. The same order was made in the action to establish the Idaho judgment. The father appeals from the order in each case.

The father makes various points but, with the exception of claimed errors in rulings of the trial court, they simmer down to the contention that the court abused its discretion in awarding any custody of the children to the mother.

The parties separated in June 1953. At the time of the hearing the children were about 10, 7, and 6 years of age. They had been with their mother from birth until February 8, 1955. It is argued the court had no authority to entertain the application for custody pendente lite in the action to establish the Idaho judgment in this jurisdiction because the mother had been found in contempt and had not complied with the restraining order in the California divorce action, and for the same reason the court was under a duty to refuse to hear the mother's application to modify the provision of the interlocutory decree with respect to custody of the children. The argument overlooks the fact that the court purged the mother of all contempt, not only with respect to her failure to comply with the provision of the interlocutory decree with respect to custody but also with respect to her failure to comply with the restraining order. The argument also overlooks the fact that the Idaho court held the California court was without jurisdiction to render the personal orders respecting custody and restraining the mother on substituted service, a matter the court below had a right to take into cosideration in proceeding to hear the applications. The order in the interlocutory decree was made on default. It was made solely on evidence presented by the father. The mother was a resident of Idaho; she was served with process in Idaho; she was not before the court to present evidence relative to the best interests of the children in the matter of custody; and the father had been restrained by the Idaho court from interfering with the mother's custody of the children. To say the court should not have proceeded to hear the applications is to say the court could not determine what is for the best interests of the children.

It is asserted the court could modify the interlocutory decree *only on a showing of a substantial change of circumstances.* The "Change of Circumstance" is not an ironclad rule. (*Foster* v. *Foster,* 8 Cal.2d 719, 728 [68 P.2d 719]; *Peterson* v. *Peterson,* 64 Cal.App.2d 631, 633 [149 P.2d 206]; *Bemis* v. *Bemis,* 89 Cal.App.2d 80, 91 [200 P.2d 84]; *Bernstein* v. *Bernstein,* 80 Cal.App.2d 921, 924 [183 P.2d 43]; *Disney* v. *Disney,* 121 Cal.App.2d 602, 607 [263 P.2d 865].) The father appeared in and contested the Idaho action. In the trial of that action he stipulated the children were in Idaho in the care of their mother and that she was a fit and proper person to have their custody and care.[3] A sufficient change of circumstances was shown as indicated by the comments of the trial judge in the present proceedings set out in the margin.[4] They settle the question. There was abundant evidence the children were mentally and physically healthy; the relationship between the mother and the children was one of love and affection; they had an excellent home with their mother; she had them attend Sunday school every Sunday; and they received the best of care and attention by her. There was evidence that she is "a wonderful little mother."

The father asserts the mother's affidavit failed to allege sufficient facts to support a modification. The claim has no merit. The same contention was made in *Sturm* v. *Sturm,* 138 Cal.App.2d 25 [291 P.2d 527]. The court answered (p. 28):

---

[3]The stipulation in part reads: "That Robert M., Christine Lindsey, and William Charles, the minor children of the parties hereto, are presently *corporeally in the State of Idaho in the care of their mother,* plaintiff herein, and said plaintiff now is and since, at least from the time of, the hearing before the above entitled court on defendant's motion for custody of said children on or about January 15, 1954, has been a fit and proper person to be awarded the custody and care of said children, if the Court has jurisdiction to make such a custody award to her."

[4]The trial judge commented: "I could point out quite a few changes in condition. Now after this judgment in Newell versus Newell there was this proceeding in Idaho which is still pending, as I understand it, on appeal; and in that proceeding Mr. Newell appeared. And that raises a question, a different situation than might be raised if he never appeared in the action. That is one situation. And in connection therewith he entered into a stipulation which was introduced yesterday which refers to the fitness of the mother to have these children, which is a change of condition after the interlocutory judgment was granted in the California case. That is just part of the change of circumstances."

"This first paragraph (reading from said stipulation) '――――――― Defendant's motion for custody of said children on or about January 15, 1954, has been a fit and proper person to be awarded the custody and care of said children if the Court of jurisdiction makes such custody award to her.' Now I think that is some evidence in regard to her fitness in regard to the children, at least at that time."

"An order to show cause is simply a notice of a motion. [Citations.] It is in the nature of a citation to a party to appear at a stated time and place to show why the requested relief should not be granted. [Citation.]

"Appellant has cited no authority in support of his contention that the court exceeded its jurisdiction in issuing the order to show cause, or in proceeding to hear the motion for modification of the order re custody. Our research has found no such limitation upon the power of the court. There is no statute prescribing any showing required for modification of an order re custody. [Citation.] Nor is there any statute requiring that the date of an order sought to be modified appear in the order to show cause. It follows that whether a citation shall be issued to a party to appear and show why such modification should not be granted and the form of such citation are both matters within the discretion of the court.

"In the instant action, all interested parties were present in court and all questions of fact pertinent to the modification of the portion of the interlocutory judgment relating to custody of the minor child of the parties were fully tried. The claimed deficiencies in the affidavit and the order to show cause did not confuse appellant as to the nature of the hearing or the relief sought."

The father says the court erred in awarding substantial custody to the mother at a time when she had contracted and was living in a bigamous marriage. The assumption that the wife had contracted a bigamous marriage is predicated on the erroneous premise that at the time she married Ralphs the Idaho judgment was not final because the appeal therefrom was pending. The judgment of divorce rendered by the Idaho trial court was a decree of absolute divorce. There is no interlocutory decree in Idaho. ■ "It is the settled law of this state that the effect of the rendition of a final judgment of divorce is to at once restore the parties to the state of unmarried persons, regardless of the fact that the judgment is appealable, and regardless of the fact that it may be set aside on motion. The divorced person becomes unmarried immediately upon the rendition of the decree, and may at once contract another marriage." (*Deyoe* v. *Superior Court*, 140 Cal. 476, 484 [74 P. 28, 98 Am.St.Rep. 73].) We have not been cited any law of Idaho indicating that it is different from the law of California. The mother has not contracted and was not living in a bigamous marriage at the time the orders appealed from were made.

 It is next contended the court erred in refusing to hear evidence asserted to have been offered by the father as to the claimed bad moral character of the mother's new husband. The new husband, Ralphs, had been divorced from a former wife. Dr. Gerty, a licensed physician called by the father, was on the witness stand. He testified he interviewed Ralphs on June 14, 1954, and had made a written report to the court in the Ralphs divorce action. The report was not introduced in evidence in that action; it had been sealed and had remained sealed at the time of the present proceedings. The following occurred:

"Q. By MR. ZACK [attorney for the father]: When you interviewed Mr. Ralphs were you— Had you ever consulted with Mr. Ralphs before?

"A. Your Honor, I don't want to get myself entangled in a situation here. I have met Mr. Ralphs before.

"THE COURT: You mean in your relationship as a Doctor?

"A. Yes, as a doctor."

"MR. ZACK: Your Honor please, I would like to make an offer of proof in chambers as to what would be proved by the contents of the report. But so that my offer may be accurate I want to make use of a copy of that report which I have never seen. . . .

"THE COURT: I am willing to take the offer in chambers. Do you want to make the offer now?

"MR. ZACK: Yes, your Honor. Let me explain: I have no personal desire to insert myself into the thing. What I want to do is: If it is all right, I will make an offer of the report which I have not seen, but I will not have seen it, I will just offer it and say if the Doctor were allowed to testify he would testify as follows as contained in this report. I want to make it perfectly clear to everyone here I have no desire out of idle curiosity to see the report but I want to lay a foundation for evidence which is decidedly material.

"THE COURT: You may make an offer of proof. Do you have any other evidence?

"MR. ZACK: No, your Honor. His testimony will be with reference to that report.

"THE COURT: Do you want to excuse him?

"MR. ZACK: Yes. Thank you so much. . . . I hereby make offer of proof that Dr. Gerty who has been produced in this Courtroom would if permitted to testify would testify substantially in accordance with a report which he filed with the Court in the case of Ralphs versus Ralphs. I don't know the number on that, I don't know what the number is.

"THE COURT: You can get it outside when you have the file.

"MR. ZACK: That is all right. Which report was submitted to the Court, Judge Thurmond Clarke, and which report after it was received by Judge Thurmond Clarke was ordered sealed. I offer to prove that Dr. Gerty would testify as to so much of that report as reflects the background and emotional tendencies and propensities of Mr. Ralphs, who will be the foster father of these children if this motion is granted. I understand that this report indicates——

"MR. LANE [attorney for the mother]: Pardon me.

"MR. ZACK: I understand that Dr. Gerty's testimony——

"MR. LANE: If he is going to make an offer of proof he should make an offer of proof and not argue as to his understanding.

"THE COURT: Finish your offer of proof.

"MR. ZACK: My offer of proof further is Dr. Gerty will testify that Mr. Ralphs is a marginal homosexual, that he is amoral, that he cannot be believed in that Mr. Ralphs told Dr. Gerty that he——"

"MR. ZACK: I want the record further to show for any purpose that may subsequently be material that I have—If the Court should direct me I will state the reason upon which I make this offer, the person from whom the information was obtained, and I want the record to show it was not by me from Dr. Gerty or by Mr. Newell from Dr. Gerty, but I want it understood that my offer is not the report. My offer is that the doctor if permitted to testify would testify substantially in conformance with the report your Honor has sealed on his desk."

An objection to the offer on the ground, among others, that it called for confidential information, was sustained. Error is asserted. We think the ruling was proper. It is clear from the record that the testimony the father sought to elicit from the doctor was confidential. The doctor so indicated. "There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person can not be examined as a witness in the following cases: . . . 4. A licensed physician or surgeon can not, without the consent of his patient, be examined in a civil action, as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient." (Code Civ. Proc., § 1881.) The statute is to be liberally construed in favor of the patient.

(*Turner* v. *Redwood Mut. Life Assn.,* 13 Cal.App.2d 573, 576 [57 P.2d 222].) ▇ The privilege may be waived by the patient but it must clearly appear there is an intention to waive "and a court will not run to such a conclusion." (*Kramer* v. *Policy Holders Life Ins. Assn.,* 5 Cal.App.2d 380, 391 [42 P.2d 665].) ▇ There was nothing in the offer of proof to indicate the father proposed to prove that Ralphs had or would waive the privilege. The offer was manifestly insufficient and the court correctly so ruled. It is in evidence that the court in the Ralphs divorce case awarded custody of a minor female child to Ralphs. The father complains of other rulings of the court in the reception and rejection of evidence. None of them is of any consequence and they do not merit discussion. (See *Gantner* v. *Gantner,* 39 Cal.2d 272, 277 [246 P.2d 923] ; *Valentine* v. *Valentine,* 47 Cal.App.2d 438, 440 [118 P.2d 17].)

The orders require the father to pay the mother $75 a month for the support of each child while she has physical custody. The father contends the court was without authority to make, and the evidence does not support, an award of child support to the mother. The court had power to make the award. (*Warren* v. *Superior Court,* 132 Cal.App.2d 392, 393-394 [282 P.2d 207].) ▇ The primary duty to support minor children rests on the father. (*Metson* v. *Metson,* 56 Cal.App.2d 328, 333 [132 P.2d 513].) ▇ The amount to be awarded for the care, support, education, and maintenance of children awarded to the custody of a mother is within the discretion of the trial court. (*McMahan* v. *McMahan,* 130 Cal.App.2d 736, 738 [279 P.2d 767] ; 16 Cal. Jur.2d 574, § 279.) ▇ The father's duty to support the children does not end with furnishing the mere necessities of life if he is able to afford more. ▇ Children are entitled to be supported in a style and condition consonant with the position in society of their parents. (*Bailey* v. *Superior Court,* 215 Cal. 548, 555 [11 P.2d 865].)

There was much evidence with respect to the standard of living which the parties maintained when living together and which the mother maintains for the children, and as to their needs. The order of the Idaho court requiring the father to pay $225 a month for the support of the children was in evidence. No question is raised as to his ability. While the mother did not testify to a specific amount required for the support of the children, the court was warranted on the evidence in concluding that the amount ordered was

reasonable. (*Cf. Ross* v. *Frank W. Dunne Co.,* 119 Cal.App. 2d 690, 700 [260 P.2d 104] ; *Johnson* v. *Snyder,* 99 Cal.App.2d 86, 90 [221 P.2d 164] ; *Merrill* v. *Dustman,* 97 Cal.App.2d 473, 477 [217 P.2d 998].)

It is hornbook law that an application for a modification of an award of custody is addressed to the sound legal discretion of the trial court, and its discretion will not be disturbed on review unless the record presents a clear case of an abuse of that discretion. (*Holsinger* v. *Holsinger,* 44 Cal.2d 132, 135 [279 P.2d 961] ; *Munson* v. *Munson,* 27 Cal.2d 659, 666 [166 P.2d 268].) The feelings and desires of the parents are not to be considered except insofar as they affect the best interests of the child. (*Taber* v. *Taber,* 209 Cal. 755, 756 [290 P. 36].) It is the welfare of the child, not the shortcomings of the respective parents, which is determinative. (*Holsinger* v. *Holsinger,* 44 Cal.2d 132, 135 [279 P.2d 961] ; *Young* v. *Young,* 117 Cal.App.2d 735, 738 [256 P.2d 1009].) In deciding where custody of children shall lie, the courts are not engaged in a disciplinary proceeding to punish parents for their weaknesses as individuals nor to reward the unoffending parents for any wrong suffered by the sins of the other. (*Ashwell* v. *Ashwell,* 135 Cal.App.2d 211, 217 [286 P.2d 983], in which the facts were similar to those claimed by the father to exist in the case at bar; *Biles* v. *Biles,* 107 Cal.App.2d 200, 201-202 [236 P.2d 621].) The court should always adopt the course that is for the best interests of the child. (*Bemis* v. *Bemis,* 89 Cal.App.2d 80, 90 [200 P.2d 84].) If it be for the best interests of the child, there is no rule preventing an award of its custody to the parent whose alleged offense caused the divorce. (*Kettelle* v. *Kettelle,* 110 Cal.App. 310, 313 [294 P. 453].)

Applying these rules to the record, there is no showing whatever that the court abused its discretion in making the orders appealed from.

The order in each case is affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied December 13, 1956, and appellant's petition for a hearing by the Supreme Court was denied January 16, 1957.